LINDA LOU KINSER GEER v. ROBERT DONALD GEER

No. 8615DC517

(Filed 3 March 1987)

**1. Divorce and Alimony § 30— equitable distribution—debts of the parties**
    N.C.G.S. 50-20(c)(1) requires the court in an equitable distribution action to consider all debts of the parties, whether a debt is one for which the parties are legally jointly liable or one for which only one party is legally liable.

**2. Divorce and Alimony § 30— equitable distribution—marital debts**
    For the purposes of equitable distribution, a marital debt is a debt incurred during the marriage for the joint benefit of the parties regardless of who is legally obligated for the debt. When determining what constitutes an equitable distribution of the marital assets, the court has the discretion to apportion or distribute the marital debts in an equitable manner.

**3. Divorce and Alimony § 30— equitable distribution—value and distribution of marital debts**
    The evidence supported the trial court's finding that two loans from defendant husband's parents were legitimate marital debts and that the value of the two debts totaled at least $9,000. Furthermore, the court had the discretion to assign one-half of the marital debts to each party and then to award defendant additional funds sufficient to pay his parents plaintiff's one-half share of the debts.

Geer v. Geer

**4. Divorce and Alimony § 30— equitable distribution—sacrifice of career for wife's education**

The evidence supported a finding by the trial court in an equitable distribution action that defendant husband gave up his career so that plaintiff wife could obtain a medical education and a license to practice medicine.

**5. Divorce and Alimony § 30— equitable distribution—findings of costs supported by exhibits**

The trial court's findings as to costs in the sale of a home, moving expenses, costs for extra child care and payments for medical school supplies were supported by exhibits introduced by defendant husband.

**6. Divorce and Alimony § 30— equitable distribution—value of contributions to spouse's education**

In valuing the direct and indirect contributions made by a spouse to help educate or develop the career potential of the other spouse, N.C.G.S. 50-20(c)(7), it is a matter of discretion what weight the court assigns a particular factor in any given case. Appellate review is thus limited to a determination of whether the court, in arriving at a value, clearly abused its discretion, and reversal is in order only upon a showing that the court's actions were manifestly unsupported by reason.

**7. Divorce and Alimony § 30— equitable distribution—wife's contributions to own education**

Where the trial court found that plaintiff wife contributed funds withdrawn from her retirement to her medical education, the court must value plaintiff's contribution from retirement and credit her contribution against the total cost of her medical education in valuing defendant husband's contributions to her medical education for equitable distribution purposes.

**8. Divorce and Alimony § 30— equitable distribution—educational expenses—moving costs—costs of selling homes**

The trial court in an equitable distribution action properly considered moving costs as expenses of plaintiff wife's medical education. However, costs incurred in selling two homes could not be considered as expenses of plaintiff's medical education where the marital estate profited from both sales.

**9. Divorce and Alimony § 30— equitable distribution—educational expenses—extra child care costs**

Evidence that the parties spent more for child care after plaintiff went to medical school than they had previously spent supported the trial court's finding as to extra child care costs as an expense of plaintiff's medical education.

**10. Divorce and Alimony § 30— equitable distribution—compelling conveyance of residence to other spouse**

N.C.G.S. 50-20(c)(4) does not require that a party must be a custodial parent in order to be awarded ownership of the marital residence in an equitable distribution action. Rather, the court has the authority, within its power in equity, to compel one former spouse to convey title to the other former spouse when justice requires.

Geer v. Geer

APPEAL by plaintiff from *Hunt, Judge.* Judgment signed 18 December 1985 in District Court, ORANGE County. Heard in the Court of Appeals 11 November 1986.

On 6 October 1983, plaintiff filed an action seeking an absolute divorce from defendant based on a separation exceeding one year. On 7 December 1983, defendant answered and counterclaimed for an equitable distribution of the marital property. On 16 December 1983 plaintiff replied, joining in defendant's request for an equitable distribution. On 29 December 1983, the court entered judgment for an absolute divorce. On 26 April 1986, defendant moved the court to consolidate this action with civil action 83CVD507, a child custody action between the parties. In 83CVD507 an order entered 6 April 1984 granted custody of the two minor children to plaintiff. Defendant moved to change custody. This motion was pending in action 83CVD507 at the time defendant moved for consolidation. On 12 July 1985, the equitable distribution action 83CVD591 and the motion to change custody in action 83CVD507 were heard together after both parties stipulated to defendant's motion to consolidate. On 18 December 1985, the court entered judgment denying defendant's motion to change custody, ordering visitation, and distributing the marital assets. Plaintiff appeals only those portions of the judgment pertaining to the property distribution.

*Long & Long, by Lunsford Long, for plaintiff appellant.*

*Lewis and Associates, by Susan H. Lewis, for defendant appellee.*

JOHNSON, Judge.

Plaintiff and defendant were married in 1970. During the first year of the marriage, plaintiff worked in Dayton, Ohio as a school teacher, and defendant went to school. After graduation in 1972 defendant worked for Roberts Consolidated as a research and development chemist. Defendant was subsequently promoted to quality control supervisor and, during his last year with Roberts Consolidated, to technical director.

Plaintiff taught full time in the public school system in Ohio until the birth of their two children in 1974 and 1976, at which time plaintiff taught part time at Sinclair College. When the

children were four years old and two years old respectively, plaintiff enrolled in Ohio State Medical School in Columbus, Ohio. The entire family moved to Columbus, Ohio in order for plaintiff to go to medical school there. Defendant gave up his job with Roberts Consolidated. In Columbus defendant was unable to find comparable employment. After one month and a half of trying to find work he took a job working from 11:00 p.m. to 7:00 a.m. Approximately six months later he found day work as a chemist.

After plaintiff completed her medical degree the family moved to Chapel Hill so that plaintiff could obtain specialization in radiology at the University of North Carolina. Defendant took odd jobs to support the family from May to October 1981. In October 1981, he found permanent work with U. S. Floor Systems as the manager of chemical products.

At the time of trial defendant worked as a general manager for Carolina Aerosol in Durham earning $25,000.00 annually. At the time of trial plaintiff worked half time as a radiologist with Wayne Radiology in Goldsboro earning $50,000.00 annually. Plaintiff has custody of the two children and is remarried to a radiologist. Defendant pays no child support and plaintiff has not requested a child support order.

The court found as fact that the parties owned the following marital property: the marital home, net value $64,800.00; a 1974 Mazda pickup truck, net value $300.00; a 1981 Subaru automobile, net value $4,000.00; a 1974 Peugeot automobile, net value $800.00; household effects previously distributed between the parties, net value to plaintiff $4,320.00, net value to defendant $4,859.00; household effects desired by neither party, to be sold, net value $650.00; bank accounts, including IRA's previously distributed between the parties, net value to plaintiff $2,900.00, net value to defendant $1,300.00; and two marital debts, each for loans from defendant's parents, one valued at $5,000.00 including interest and one valued at $4,000.00 including interest. The court concluded that an equal distribution of the marital property would not be equitable "because of the direct and indirect contributions made by the Defendant to help educate or develop the career potential of the Plaintiff and the consequent disparity in the income of the Plaintiff at the time of the distribution." To effectuate defendant's reimbursement for the costs of plaintiff's

medical education, plaintiff was ordered to execute a deed of the marital residence to defendant and defendant assumed liability for the marital debts to his parents.

[1, 2] In plaintiff's first Assignment of Error plaintiff contends that the court exceeded the scope of North Carolina's equitable distribution statute when it distributed an unsecured marital debt by assigning one-half of the loan to each party. Specifically, plaintiff contends that unsecured debts do not qualify as marital property as defined in G.S. 50-20(b)(1) and therefore are not subject to distribution by the court. In a separate Assignment of Error, plaintiff contends that the evidence is insufficient to support the finding of fact that the value of the marital debt is $9,000.00.

In *Dorton v. Dorton*, 77 N.C. App. 667, 336 S.E. 2d 415 (1985), the appellant assigned error to the court's failure to consider and assign liabilities for "all the parties' *marital debts.*" *Id.* at 678, 336 S.E. 2d at 422 (emphasis added). However, this Court in *Dorton* did not define marital debts and discussed only debts that were incurred individually by one former spouse. The Court acknowledged that pursuant to G.S. 50-20(c)(1), the court is required to consider the liabilities of each party when making an equitable distribution. *Id.* We hold that G.S. 50-20(c)(1) requires the court to consider all debts of the parties, whether a debt is one for which the parties are legally, jointly liable or one for which only one party is legally, individually liable. Regardless of who is legally obligated for the debt, for the purpose of an equitable distribution, a marital debt is defined as a debt incurred during the marriage for the joint benefit of the parties. *Allen v. Allen*, 287 N.C. 501, 506, 339 S.E. 2d 872, 875-76 (1986). The court has the discretion, when determining what constitutes an equitable distribution of the marital assets, to also apportion or distribute the marital debts in an equitable manner. *See id.* In today's society debt is commonplace and distribution of the debts can be as great a concern to divorced persons as distribution of the assets. Distribution of marital debts has the benefit of resolving all issues flowing from the former marriage relationship. In particular, "loans from close family members must be closely scrutinized for legitimacy." *Id.* at 507, 339 S.E. 2d at 876. It is incumbent upon the court distributing a debt to ensure that it was a marital debt, that is, incurred during the marriage for the joint benefit of the parties during the marriage. *Id.* at 506, 339 S.E. 2d at 875-76. According-

ly, when the court distributes debts the court must make findings to show it considered all debts of the parties and to identify those which comprise marital debts.

[3] In the case *sub judice*, there was evidence to support the court's finding of fact that the parties borrowed $5,000.00 from defendant's parents in 1970 for the purchase of a mobile home with the promise that it would be repaid with interest. There is also evidence to show that subsequently the parties bought defendant's parents' Peugeot automobile by paying them $800 at the time of the purchase and promising to pay the balance of $3,700.00 plus 6% interest at a later time. Plaintiff did not deny the existence or amount of the loan from defendant's parents in her testimony. This evidence is sufficient to support the court's finding that the loans from defendant's parents were legitimate debts and that the value of the two debts totaled at least $9,000.00, inclusive of interest; therefore, this finding of fact is conclusive on appeal. *Little v. Little*, 9 N.C. App. 361, 365, 176 S.E. 2d 521, 523-24 (1970). We note that the evidence would have supported a finding that the parties owed defendant's parents $11,500.00, as shown on defendant's Exhibit 9. However, it was not prejudicial to plaintiff that the court found as fact that the marital debt was less in amount. Further, the court was required to consider the evidence pursuant to G.S. 50-20(c)(1). The court had the discretion to assign one-half of the marital debts to each party and to then award defendant additional funds sufficient to pay his parents plaintiff's one-half share of the debt. *See White v. White*, 312 N.C. 770, 777, 324 S.E. 2d 829, 833 (1985). The court properly made findings to support the conclusion and award with respect to the parties' marital debts. Plaintiff's first two Assignments of Error are overruled.

[4] In plaintiff's next Assignment of Error she contends that the evidence is insufficient to support the finding of fact that defendant "gave up his career so that Plaintiff could obtain a medical education and license to practice medicine."

We find that the record on appeal and the transcript of the proceedings is replete with evidence from which the court could find that defendant interrupted his career to its likely detriment as he followed plaintiff while she pursued a medical career, notwithstanding the fact that it was a joint decision that plaintiff go

to medical school. Accordingly, this finding of fact is conclusive on appeal, *see Little, supra,* and this Assignment of Error is overruled.

Finding of Fact 14 states in pertinent part as follows:

14. Pursuant to a plan of the parties to improve the economic situation of the family, the Defendant gave up his career so that the Plaintiff could obtain a medical education and license to practice medicine. . . . These costs are approximately $29,824.50 and consist of the following items of expenditure:

### Costs of Medical Education

| | |
|---|---|
| Costs Incurred in Sale of First Home and Move | $ 4,465.70 |
| Cost Incurred in Sale of Second Home | 5,126.04 |
| Moving Expenses to Chapel Hill | 4,046.00 |
| Extra Child Care | 4,756.09 |
| Payments for Medical School | 10,736.67 |
| Payments for Medical School Supplies | 694.00 |
| Total Out-of-Pocket Payments Directly Attributable to Plaintiff's Medical Education: | $29,824.50 |

[5] In plaintiff's next Assignment of Error she contends that the evidence is insufficient to support four of the itemized amounts shown as costs of plaintiff's medical education, to wit: the costs incurred in the sale of the second home ($5,126.04), the moving expenses to Chapel Hill ($4,046.00), the costs for extra child care ($4,756.09), and payments for medical school supplies ($694.00). Specifically, plaintiff contends that the record contains no testimony to support these figures and that the exhibits upon which defendant relies were never offered or received into evidence, leaving the record silent as to these itemized amounts. Plaintiff's argument is without merit. All the exhibits upon which defendant relies to establish these itemized amounts were submitted to the court and marked as defendant's exhibits. At the close of all the evidence, counsel for defendant stated, "I have no further evidence, Your Honor, but want to be sure all my exhibits are in." The court excluded no exhibits. Further, the 7 May 1986 order settling the record on appeal ordered that "the Record on

Appeal shall include all trial exhibits entered into evidence at the hearing. . . ." This Assignment of Error is overruled.

In plaintiff's last and most lengthy Assignment of Error plaintiff contends that the order directing plaintiff to reimburse defendant for the direct and indirect costs of plaintiff's medical education constitutes an abuse of discretion. Plaintiff lists eight grounds for error in her argument. We will address each in turn.

North Carolina's equitable distribution statute expressly provides that professional licenses are separate property. G.S. 50-20(b)(2). Hence, professional licenses are not subject to valuation and distribution. Even so, our legislature recognized a need to consider the contributions of one spouse that enhance the career of the other when determining what constitutes an equitable result. One of the twelve statutory factors, which the court is required to consider, is "[a]ny direct or indirect contribution made by one spouse to help educate or develop the career potential of the other spouse." G.S. 50-20(c)(7); *Smith v. Smith*, 71 N.C. App. 242, 248, 322 S.E. 2d 393, 397 (1984), *disc. rev. allowed*, 313 N.C. 174, 326 S.E. 2d 33, *modified and affm'd*, 314 N.C. 80, 331 S.E. 2d 682 (1985). Such consideration is especially appropriate when, as here, the evidence shows that defendant sacrificed in order to contribute toward plaintiff's career goals by interrupting his career, relocating twice, and assuming a greater role than plaintiff in child care and homemaking duties. Because the parties separated shortly before plaintiff completed her medical training, defendant was prevented from realizing any of the expected benefits to the marriage of the joint decision that plaintiff pursue a medical degree with defendant's financial, child care, and homemaking support.

[6]    The legislature gives no guidance on the thorny issue of how to value the direct and indirect contributions of the nonstudent spouse. (An Indiana statute expressly limits a monetary award for the financial contributions of one spouse to contributions for "tuition, books, and laboratory fees for the higher education of the other spouse." Ind. Code sec. 31-1-11.5-11(d) (Supp. 1986).) This question has never before been addressed in North Carolina. As with any statutory factor under G.S. 50-20(c), it is a matter of discretion what weight the court assigns a particular factor in any given case. *See White, supra*, at 777, 324 S.E. 2d at 833. Ap-

pellate review is thus limited to a determination of whether the court, in arriving at a value, clearly abused its discretion. *See id.* Reversal is in order only upon a showing that the court's actions were manifestly unsupported by reason. *Id.*

In the case *sub judice* the court made the following pertinent conclusions of law:

> 8. An equal distribution of the marital property would require the Defendant to pay $29,824.50 to the Plaintiff as a distributive award to make an equal distribution of the marital property pursuant to North Carolina General Statute sec. 50-20(b)(3).

> 9. An equal distribution of the marital property in this case is inequitable because of the direct and indirect contributions made by the Defendant to help educate or develop the career potential of the Plaintiff and the consequent disparity in the income of the Plaintiff at the time of the distribution. Therefore, the Plaintiff shall pay the sum of $29,824.50 to the Defendant for his direct and indirect contributions during the marriage to the Plaintiff's acquisition of a medical education and the license to practice medicine pursuant to North Carolina General Statutes sec. 50-20(c)(7).

> 10. Since the distributive awards in (8) and (9) cancel each other, no distributive payments are required of the Plaintiff or the Defendant. However, the Plaintiff shall execute a deed of the marital residence to the Defe[n]dant promptly.

[7] First, plaintiff contends that the court abused its discretion by failing to consider the direct contributions plaintiff made to the costs of her medical education. We agree. Plaintiff testified that she worked evenings before medical school to earn $800.00 for medical books, that she received a $1,000.00 cash scholarship, and that she contributed $3,848.00 in retirement that had accrued when she taught school. The court was not compelled to find as fact that plaintiff made the contributions she claimed. However, the court did find in the last sentence of Finding of Fact No. 11 that "Plaintiff left her teaching job at a community college and withdrew her retirement to assist financially in the plan for her to go to medical school." Having found that plaintiff made this direct contribution to her medical education, the court then

should have valued her contribution and credited her direct contribution against the total costs of her medical education. *DeLa Rosa v. DeLa Rosa*, 309 N.W. 2d 755 Minn. (1981). To reimburse defendant, for a direct contribution the court found plaintiff made, is not supported by reason. Accordingly, that part of the order which values defendant's contributions to plaintiff's medical education must be vacated and remanded. On remand the court must value plaintiff's contribution from retirement and subtract that amount from the total costs of defendant's contributions to plaintiff's medical education.

[8]  Secondly, plaintiff contends that the court abused its discretion by including as educational expenses the moving expenses and the costs incurred in selling two homes. We hold that moving expenses are expenses which are indirectly attributable to plaintiff pursuing a medical career. However, a conclusion that the sale of the parties' home in Dayton, Ohio and later the sale of their home in Columbus, Ohio are costs directly or indirectly attributable to the cost of plaintiff's medical education is not manifestly supported by reason based upon the evidence presented at trial. The evidence shows that the parties purchased a home in Dayton, Ohio for $42,000.00. When they moved to Columbus, Ohio in order that plaintiff could attend medical school they sold the home for $65,000.00. Hence, the value of the marital estate increased $23,000.00, minus the costs of selling the home. The parties did not suffer a loss from selling the Dayton home; they made a profit which they rolled over into a home in Columbus. The parties paid $52,000.00 in cash for the Columbus home. The record does not show for what price this house sold, but the record does indicate that the parties also made a profit from its sale. It is a manifest abuse of discretion to consider the expenses of selling these homes as medical school costs since the marital estate profited from both sales. Reason does not support the conclusion that these are costs associated with plaintiff's education. Accordingly, the court must subtract these costs from defendant's contribution to plaintiff's education, while retaining moving expenses to Columbus and later to Chapel Hill as indirect costs of the medical education.

[9]  Next plaintiff contends that it was error to consider "extra" child care costs a legitimate educational expense. Defendant presented evidence which tended to show that the parties spent

more for child care after plaintiff went back to medical school than they had previously spent. Although not the most rigorous method of proof, the increase in child care costs afforded the court some measure supported by reason for this indirect cost of plaintiff's education. The court did not abuse its discretion.

[10]   Next, plaintiff contends that the court did not consider as required by G.S. 50-20(c)(4) defendant's need, or more specifically, his lack of need to occupy or own the marital residence when the court ordered plaintiff to execute a deed of the marital residence to defendant. G.S. 50-20(c)(4) requires the court to consider the custodial parent's need to occupy the marital residence. There is no basis for construing G.S. 50-20(c)(4) to require that a party must be a custodial parent in order to be awarded ownership of the marital residence. The court has the authority, within its power in equity, to compel one former spouse to convey title to property to the other former spouse when justice requires. *See* G.S. 50-20(g); *Wade v. Wade*, 72 N.C. App. 372, 383, 325 S.E. 2d 260, 270, *disc. rev. denied*, 313 N.C. 612, 330 S.E. 2d 616 (1985). This argument is totally without merit.

Next, plaintiff contends that the court's calculations include mathematical errors. All mathematical errors are insubstantial, and more importantly, are in plaintiff's favor; hence, plaintiff can claim no prejudice. Plaintiff's remaining arguments are without merit and do not warrant further discussion.

In conclusion, this cause must be remanded to value plaintiff's retirement contribution to the medical education expenses, to credit this contribution against the total amount of defendant's contributions, and to value and subtract the costs of the sale of the Dayton home and the sale of the Columbus home. Further, a new trial would be unnecessarily wasteful. *Wade v. Wade*, *supra*, at 387, 325 S.E. 2d at 272. Accordingly, the trial court may rely on the existing record, free of evidentiary error, on remand.

Affirmed in part, vacated in part and remanded for further proceedings not inconsistent with this opinion.

Judges ARNOLD and EAGLES concur.