WILLIAM WORNOM, PLAINTIFF v. NORMA F. WORNOM, DEFENDANT

No. COA96-1069

(Filed 17 June 1997)

**1. Divorce and Separation § 119 (NCI4th)— equitable distribution—marital property—"presently owned"—date of separation**

The trial court did not err by classifying and distributing marital assets and liabilities that existed at the time of separation but no longer existed at the time of trial. The words "presently owned" in N.C.G.S. § 50-20(b)(1) refer to the date of separation rather than to the date of trial.

**Am Jur 2d, Divorce and Separation §§ 879, 880.**

**Proper date for valuation of property being distributed pursuant to divorce. 34 ALR4th 63.**

**Divorce: equitable distribution doctrine. 41 ALR4th 481.**

**2. Divorce and Separation § 147 (NCI4th)— equitable distribution—debt owed to third party**

The trial court did not err in determining that the parties to an equitable distribution action were indebted to the husband's brother for $275,000.00 where the evidence indicated that loans made by the brother to plaintiff and defendant were made in an

effort to assist plaintiff and defendant in paying off their business debts and were not an investment in their failed convenience store business.

**Am Jur 2d, Divorce and Separation §§ 536, 757.**

**Divorce: equitable distribution doctrine. 41 ALR4th 481.**

3. **Divorce and Separation § 159 (NCI4th)— pre-separation withdrawal—dissipated marital property—nonmarital purpose**

There was sufficient evidence to support the trial court's findings that defendant wife's pre-separation withdrawal of funds from a corporation which was jointly owned by plaintiff and defendant dissipated marital property for nonmarital purposes where (1) the parties were the sole shareholders of the corporation, (2) the corporation was the sole source of income for plaintiff and defendant, (3) defendant converted funds from the corporation without plaintiff's knowledge, and (4) defendant's conversion of funds precipitated the demise of the corporation.

**Am Jur 2d, Divorce and Separation §§ 915, 927, 929.**

**Spouse's dissipation of marital assets prior to divorce as factor in divorce court's determination of property division. 41 ALR4th 416.**

4. **Divorce and Separation § 158 (NCI4th)— equitable distribution—close corporation—conversion of funds—distributional factor—dissuading relative from seeking criminal charges—harmless error**

In an equitable distribution action, the trial court committed harmless error in considering plaintiff's action of dissuading his brother from seeking criminal charges against defendant for converting funds from a jointly owned close corporation as a distributional factor pursuant to N.C.G.S. § 50-20(c)(12) where the distribution was otherwise supported by competent evidence.

**Am Jur 2d, Divorce and Separation §§ 915 et seq.**

Appeal by defendant from judgment entered 25 March 1996 by Judge William A. Christian in Lee County District Court. Heard in the Court of Appeals 19 May 1997.

*Jonathan Silverman for plaintiff appellee.*

*Richard B. Hager, P.A., by Richard B. Hager, for defendant appellant.*

SMITH, Judge.

Plaintiff and defendant were married on 5 August 1974 and separated on 20 June 1988. On 29 September 1994 plaintiff filed an action for absolute divorce from defendant, and defendant answered and counterclaimed seeking equitable distribution of the parties' marital property under N.C. Gen. Stat. § 50-20 (1995).

The evidence offered at the equitable distribution trial in January 1995 was as follows: In July 1984, plaintiff and defendant formed a corporation, Super Saver, to own and operate a chain of five convenience stores. To fund Super Saver, the parties personally borrowed $450,000.00 from BB&T using their marital home as collateral. Plaintiff's brother, Sam Wornom, guaranteed $150,000.00 to secure the loan. Plaintiff managed Super Saver and its five convenience stores. Defendant worked as the accounts payable clerk and was responsible for payroll. Until the date of their separation, Super Saver was the sole source of employment and income for plaintiff and defendant.

From 2 January 1987 through 13 May 1988 defendant took approximately $151,000.00 from the Super Saver accounts without plaintiff's knowledge or consent. At trial, defendant admitted that she "basically threw $150,000 of funds generated by Super Saver out the window and can't account for it." Defendant also allowed Lula Jane Venable, the corporation's bookkeeper, to take approximately $70,000.00 from Super Saver. By 1 March 1987 Super Saver began to experience significant financial difficulties, and plaintiff loaned Super Saver $60,000.00 to quell the cash flow problems. He discussed his cash flow concerns with both defendant and Venable, but neither revealed that they had been taking funds from the Super Saver accounts.

Because of continuing cash flow problems, plaintiff and defendant borrowed an additional $61,000.00 from Mid-South Bank on 28 May 1987, secured by a deed of trust on their marital home. In addition, Sam Wornom loaned $200,000.00 to Super Saver on 12 August 1987. Super Saver signed a $200,000.00 note to Sam Wornom, guaranteed by plaintiff and defendant individually. Conditions of the trans-

action also provided that the parties would pay $5,000.00 to Sam Wornom on any outstanding indebtedness he guaranteed. On 28 August 1987 the original $450,000.00 note was renegotiated, and plaintiff and defendant signed a new note for $385,000.00 payable to BB&T. This note covered the remaining balance on the original $450,000.00 loan and was also used to repay the $200,000.00 loan from Sam Wornom. Sam Wornom guaranteed the new note to an amount of $350,000.00.

On 31 December 1987 Super Saver assumed the $385,000.00 note, and plaintiff and defendant gave unconditional joint and several guarantees for the full amount of the loan. Sam Wornom again guaranteed it to the amount of $350,000.00. On 1 February 1988 Sam Wornom paid BB&T $375,000.00, which was used to reduce the balance on the $385,000.00 BB&T note.

Nevertheless, the financial condition of Super Saver worsened as defendant continued to take funds, and ultimately it was sold to Li'l Thrift Food Marts on 25 May 1988. From the proceeds of the sale, Super Saver's secured debts to BB&T were paid, and Sam Wornom was paid a total of $275,072.49. Sam Wornom also paid off several of Super Saver's vendors in the amount of $25,000.00. At the time Super Saver finally failed and was sold, plaintiff was hospitalized with back problems, and he learned defendant and Venable had been taking Super Saver funds. Defendant and plaintiff separated on 20 June 1988. Super Saver was dissolved on 1 July 1988.

Because he had loaned a total of $421,000.00 of his own money to Super Saver, $296,000.00 of which was not repaid after the sale of the business, Sam Wornom was anxious to seek criminal prosecution against defendant, but plaintiff convinced him to refrain. During their separation, plaintiff maintained and improved the marital home and paid to defendant a total of $54,347.51, either in direct cash payments or to pay for health insurance, motor vehicle, auto insurance, life insurance, and utilities.

After trial, the court entered an equitable distribution judgment, ordering that plaintiff receive 47% and defendant receive 53% of the net marital estate. The court ordered plaintiff to pay a distributive award of $57,765.00 to create the 53% to 47% division. Defendant appeals.

[1] Defendant first argues the trial court erred by classifying and distributing marital assets and liabilities that existed at the time of sep-

aration but no longer existed at the time of trial. Her argument is entirely without support. Under N.C. Gen. Stat. § 50-20 (b)(1) (1995), marital property is defined as "all real and personal property acquired by either spouse or both spouses during the course of the marriage and before the date of the separation of the parties, and presently owned, except property determined to be separate property . . . ."

Defendant contends that "presently owned" under this statute refers to the date of trial. This Court has clearly held, however, that "presently owned" under G.S. § 50-20(b)(1) refers to the date of separation. *See Lilly v. Lilly*, 107 N.C. App. 484, 486, 420 S.E.2d 492, 493 (1992); *Talent v. Talent*, 76 N.C. App. 545, 552-53, 334 S.E.2d 256, 261 (1985). Defendant's first argument, therefore, is without merit.

**[2]** Defendant next argues there was insufficient evidence for the trial court to find the parties were indebted to Sam Wornom in the amount of $275,000.00. She asserts $275,000.00 is a loss on Sam Wornom's personal investment in Super Saver, which does not increase the parties' marital debt. We disagree.

This Court has held that G.S. § 50-20(c)(1)

requires the court to consider all debts of the parties, whether a debt is one for which the parties are legally, jointly liable or one for which only one party is legally, individually liable. Regardless of who is legally obligated for the debt, for the purpose of an equitable distribution, a marital debt is defined as a debt incurred during the marriage for the *joint benefit* of the parties.

*Geer v. Geer*, 84 N.C. App. 471, 475, 353 S.E.2d 427, 429 (1987) (emphasis added).

There is competent evidence, in both the testimony of plaintiff and Sam Wornom, that Sam Wornom never intended his funds to be investments in Super Saver but instead used his funds to assist the parties, for their joint benefit, in sustaining their failing business. The evidence shows that in addition to owing $5,000.00 as part of a guarantee agreement and $21,000.00 under a promissory note executed on 19 May 1988, the parties owe Sam Wornom a balance of $274,927.51 on additional loans he made to Super Saver. On 1 February 1988 Sam Wornom paid $375,000.00 to BB&T under his guarantee for the $385,000.00 loan to Super Saver, and on 9 June 1988 he paid $25,000.00 to several of Super Saver's vendors when it was sold. From the proceeds of the sale of Super Saver, Sam Wornom received a total

of $125,072.49, leaving a balance due of $274,927.51, which the trial court rounded up to $275,000.00.

Although Sam Wornom acquired ownership of Super Saver stock in February 1988 as security for his $375,000.00 payment to BB&T, the trial court found

> this activity by Sam Wornom was a loan for the benefit of the parties and not an investment or other entrepreneurial activity as contended for by the Defendant. All of Sam Wornom's activities as they relate to Super Saver were done to assist his family members in a time of financial crisis.

We find competent evidence in the record of this transaction and the circumstances surrounding it necessary to support this finding. Likewise, the evidence indicates that Sam Wornom's $25,000.00 payment to Super Saver's vendors was not an investment but rather was made only to assist the parties in paying off their business debts.

The evidence clearly shows that debts owed to Sam Wornom arose prior to the date of separation and inured to the benefit of both parties. *See Geer*, 84 N.C. App. at 475, 353 S.E.2d at 430. Furthermore, because we find competent evidence to support the trial court's finding that the parties are indebted to Sam Wornom in the amount of $275,000.00, we do not address defendant's alternative argument that the amount of indebtedness is actually $201,928.00, based solely upon losses reported in Sam Wornom's 1988 tax returns.

[3] Defendant next argues there was insufficient evidence to support the trial court's finding that her pre-separation withdrawal of funds from Super Saver dissipated marital property for nonmarital purposes. We disagree.

> The general rule is "marital fault or misconduct of the parties which is not related to the economic condition of the marriage is not germane to a division of marital property under [G.S.] 50-20(c) and should not be considered." However, fault which is related to the economic condition of the marriage may be considered. Fault or misconduct "which dissipates or reduces marital property for nonmarital purposes" is " 'just and proper' under N.C.G.S. sec. 50-20(c)(12)."

*Spence v. Jones*, 83 N.C. App. 8, 11, 348 S.E.2d 819, 821 (1986) (quoting *Smith v. Smith*, 314 N.C. 80, 87-88, 331 S.E.2d 682, 687 (1985)).

In *Spence*, this Court noted that there is a presumption of consent by each spouse to the other spouse's use of funds from a spousal joint account for the purpose of sustaining the family. *Id.* Under the facts in *Spence*, the wife offered no evidence that the husband made non-marital use of the funds, but merely showed that the funds withdrawn exceeded the family's expenses. In addition, both spouses had equal access to the funds, and the record of withdrawals did not indicate which one of them made particular withdrawals. In turn, the *Spence* Court found insufficient evidence that the husband alone withdrew funds from a spousal joint account without his wife's consent and used the funds for nonmarital purposes. *Id.* at 12, 348 S.E.2d at 821-22.

The facts in the case *sub judice* are distinguishable. In this case, there was competent evidence to support the trial court's findings that (1) the parties formed Super Saver in 1984 to own and operate a chain of five convenience stores; (2) Super Saver was the sole source of employment and income for the parties from August 1984 through June 1988; (3) the parties were the sole shareholders of Super Saver from August 1984 until February 1988; (4) between 2 January 1987 and 13 May 1988 defendant converted $151,389.47 of Super Saver's funds and allowed Super Saver's bookkeeper to convert $70,838.47 of Super Saver's funds; (5) as a result of defendant's acts Super Saver began experiencing financial problems in early 1987; (6) when Super Saver was losing money, plaintiff did not know defendant was converting Super Saver funds; (7) after being told of Super Saver's financial problems, defendant should have been aware that her conversion of funds was "destroying the corporation which was the parties' livelihood and to which their economic well-being was tied"; and (8) defendant's acts "prior to the date of separation . . . had a severe economic impact on the marital estate shortly prior to the date of separation[,] and Defendant's conduct dissipated or reduced marital property for primarily non-marital purposes."

These findings, along with plaintiff's testimony that he was unaware defendant was converting funds from Super Saver until June 1988, and defendant's own acknowledgement that she "basically threw $150,000 of funds generated by Super Saver out the window and can't account for it," are sufficient to overcome the presumption that defendant's withdrawal of funds from Super Saver was with plaintiff's consent and for marital purposes. *See Spence*, 83 N.C. App. at 11, 348 S.E.2d at 821.

Moreover, the evidence also shows defendant's conversion of Super Saver funds dissipated the parties' marital property. From Super Saver's inception until February 1988, the parties were the sole shareholders in the close corporation, and Super Saver was their sole source of employment and income. Accordingly, defendant's acts in converting funds from Super Saver from 2 January 1987 to 13 May 1988, ultimately precipitating Super Saver's demise, clearly dissipated marital property.

[4] Finally, defendant argues the trial court erred by considering as distributional factors (1) defendant's pre-separation misconduct with regard to Super Saver and (2) plaintiff's dissuading his brother from seeking a possible criminal prosecution against defendant for such misconduct.

First, defendant contends the trial court should not have considered defendant's misconduct with respect to Super Saver in reaching a decision on the division of the marital estate. In light of our conclusion above that the evidence supports the finding that defendant dissipated the marital estate by converting Super Saver funds for non-marital purposes, this argument necessarily fails.

We agree with defendant, however, that plaintiff's actions in dissuading his brother from seeking criminal charges against defendant does not affect the marital economy and therefore is not a proper distributional factor under G.S. § 50-20(c)(12). *See Smith v. Smith*, 314 N.C. 80, 87, 331 S.E.2d 682, 687 (1985); *Spence*, 83 N.C. App. at 11, 348 S.E.2d at 821. At most, this conduct affects only the separate property of defendant, as it mitigates her potential post-separation personal legal expenses. However, such potential mitigation is speculative at best. The trial court therefore abused its discretion in considering plaintiff's efforts to deflect criminal charges against defendant as a distributional factor. Nevertheless, because we find the distribution is otherwise supported by competent evidence, and the judgment reflects a "rational basis" for the distribution, we find the error harmless and affirm the judgment. *See Munn v. Munn*, 112 N.C. App. 151, 157, 435 S.E.2d 74, 78 (1993); *see also McIver v. McIver*, 92 N.C. App. 116, 124, 374 S.E.2d 144, 149 (1988) (although trial court improperly considered fault in making distribution, no prejudice was shown, and error, if any, was harmless).

Affirmed.

Judges EAGLES and McGEE concur.