IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-100

Filed 5 March 2025

Orange County, No. 21-SP-147

IN RE:

FORECLOSURE OF REAL PROPERTY
UNDER DEED OF TRUST FROM
VIRGINIA LEE GODFREY AND
HARRY CRAIG DEES, II A/K/A
H. CRAIG DEES, II, IN THE
ORIGINAL AMOUNT OF $150,000.00,
PAYABLE TO RBC CENTURA BANK,
DATED OCTOBER 31, 2003 AND
RECORDED ON NOVEMBER 11, 2003
IN BOOK RB 3260 AT PAGE 103,
ORANGE COUNTY REGISTRY,

TRUSTEE SERVICES OF CAROLINA,
LLC, SUBSTITUTE TRUSTEE


Appeal by petitioner from an order entered 30 May 2023 by Judge Alyson Grine

in Orange County Superior Court. Heard in the Court of Appeals 23 October 2024.

*Brock & Scott, PLLC, by Alan M. Presel, for petitioner-appellant.*

*Buckmiller, Boyette & Frost, PLLC, by Joseph Z. Frost, for respondent-appellee.*


DILLON, Chief Judge.


I. Background

Petitioner Trustee Services of Carolina, LLC, (the "Trustee") is the substitute

trustee on a deed of trust encumbering a homestead consisting of approximately sixty

acres in Orange County (the "Property"). This deed of trust was purportedly executed in 2003 by the Property owners, Virginia Lee Godfrey and Harry Craig Dees II ("Borrowers"), for the purpose of securing a home equity line of credit (a "HELOC").

In 1998, Borrowers purchased the Property as tenants by the entirety. Five years later, in 2003, Borrowers purportedly obtained a HELOC secured by the deed of trust described in the paragraph above. In 2018, Ms. Godfrey brought a separate action against Mr. Dees for divorce and equitable distribution. In 2020, Ms. Godfrey was awarded sole title to the Property and to the HELOC debt in that domestic action.

In 2021, the Trustee initiated this foreclosure based on a default in payment on the 2003 HELOC. After a hearing on the matter, the trial court concluded that the Trustee had no right to foreclose, based on Ms. Godfrey's contention asserting that her signatures on the 2003 HELOC loan documents were forged. The Trustee appeals from an order denying its right to foreclose.

## II. Analysis

A non-judicial foreclosure under Section 45-21.16 of our General Statutes may not be ordered unless the clerk or judge finds the existence of all six elements set forth in subsection (d) of that Section. Otherwise, it is the duty of the clerk or judge to deny foreclosure.

In reviewing a superior court's order under N.C.G.S § 45-21.16(d1), "this Court first determines whether the superior court applied the proper scope of review. If so, then this Court decides only whether competent evidence exists to support the trial

court's findings of fact and whether the conclusions reached were proper in light of the findings." *In re Garvey*, 241 N.C. App. 260, 263–64 (2015) (citations and quotation marks omitted). On appeal, conclusions of law are reviewable *de novo*. *In re Bass*, 366 N.C. 464, 467 (2013).

Pursuant to Section 45-21.16(d),

> If the clerk finds the existence of **(i) valid debt** of which the party seeking to foreclose is the holder, (ii) default, **(iii) right to foreclose** under the instrument, (iv) notice to those entitled to such under subsection (b), (v) that the underlying mortgage debt is not a home loan as defined in G.S. 45-101(1b), or if the loan is a home loan under G.S. 45-101(1b), that the pre-foreclosure notice under G.S. 45-102 was provided in all material respects, and that the periods of time established by Article 11 of this Chapter have elapsed, and (vi) that the sale is not barred by G.S. 45-21.12A, then the clerk shall authorize the mortgagee or trustee to proceed under the instrument, and the mortgagee or trustee can give notice of and conduct a sale pursuant to the provisions of this Article.

(Emphasis added).

Based on Ms. Godfrey's testimony that she did not sign the HELOC note in 2003, the court did not find the existence of a valid debt under subsection (i). And based on her testimony that she did not sign the HELOC deed of trust, the court did not find that the Trustee had a right to foreclose under subsection (iii).

On appeal, the Trustee argues, in part, that even if it failed to prove that Ms. Godfrey, herself, had signed the HELOC note and deed of trust in 2003, she is still bound under those documents based on the evidence that she "ratified" the 2003

HELOC through her subsequent actions. Indeed, our Supreme Court adopted a dissent from our Court, which reasoned that a party may ratify an agreement (s)he may not have signed by retroactively authorizing or otherwise approving it, either expressly or by implication. *See Goodwin v. Webb*, 357 N.C. 40 (2003) (adopting the dissenting opinion from our Court). Specifically, the dissenting judge, whose opinion was adopted by our Supreme Court, stated:

> A party ratifies an agreement by retroactively authorizing or otherwise approving it either expressly or by implication. Thus, ratification can occur where a party accepts benefits and performs under an agreement. The act only constitutes ratification if it is done with full knowledge that the acceptance of benefits or the performance arises pursuant to the agreement and is done so without any duress.

*Goodwin v. Webb*, 152 N.C. App. 650, 656–57 (2002) (Greene, J., dissenting) (citations and quotation marks omitted). *See also Link v. Link*, 278 N.C. 181, 197 (1971) (party bound by agreement she ratifies even if originally procured by fraud or duress).

Before considering the Trustee's "ratification" argument, we first address Ms. Godfrey's contention that an argument based on ratification is not appropriate for a foreclosure hearing held pursuant to N.C.G.S. § 45-21.16. Ms. Godfrey contends that an argument based on "ratification" is *equitable* in nature and, therefore, is not appropriate for consideration in a Section 45-21.16 hearing before the clerk (or before the superior court on review). Rather, she contends, equitable arguments may only be considered in a separate proceeding brought directly before a superior court judge

- 4 -

under Section 45-21.34, which provides the procedure to seek an order to enjoin a foreclosure sale on equitable grounds.

It is true, as stated by our Supreme Court, that "[e]quitable defenses to foreclosure . . . may not be raised in a hearing pursuant to N.C.G.S. § 45-21.16 or on appeal therefrom but must be asserted in an action to enjoin the foreclosure sale under N.C.G.S. § 45-21.34." *In re Goforth Properties*, 334 N.C. 369, 374 (1993). We note that our Supreme Court has described "ratification" as equitable in nature at times, *see Maynard v. Moore*, 76 N.C. 158, 164–65 (1877) (stating that "this defense is purely equitable"), and as legal in nature at times, *see Branch Banking & Trust Co. v. Gill*, 293 N.C. 164, 193 (1977) (describing ratification as "a doctrine of the common law, not of equity.").

But we conclude that it makes no difference whether the Trustee's ratification argument is equitable in nature or legal in nature as the Trustee is not seeking to enjoin the foreclosure. Rather, it is the Trustee who is seeking an order to allow the foreclosure to proceed. And the Trustee is merely trying to meet its burden of demonstrating that the 2003 HELOC note and deed of trust are valid through evidence that Ms. Godfrey either signed those documents or otherwise ratified her signatures thereon placed by someone else, perhaps by her then-husband Mr. Dees. And we have held it is appropriate for a trustee/lender in meeting its burden in a Section 45-21.16 hearing, to show the existence of a valid debt and deed of trust to offer evidence that the borrower ratified the documents (s)he claims (s)he did not

actually sign. *See, e.g., In re Espinosa v. Martin*, 135 N.C. App. 305, 308–10 (1999) (considering a bank's ratification argument in the context of an appeal from a Section 45-21.16 hearing); *In re Davis*, 266 N.C. App. 240, *16 (2019) (unpublished) (holding deed of trust was valid in the context of a Section 45-21.16 hearing based on ratification). Accordingly, we hold it is proper for the Trustee to meet its burden of demonstrating the validity of the HELOC note and deed of trust based on evidence that Ms. Godfrey ratified those documents in a Section 45-21.16 hearing.

The Trustee argues that several items in the record point to Ms. Godfrey's ratification of the 2003 HELOC.

First, the Trustee points to Ms. Godfrey's filings in her 2018 domestic proceeding against Mr. Dees. In her *verified* 2018 domestic complaint, she avers and swears to the court that there were "two jointly held debt obligations secured by the [Property]; a home mortgage [obtained from Carolina Farm Credit in 2013] with . . . a current outstanding balance of $660,845.29 . . . and [the 2003 HELOC] held by [RBC Centura's successor entity] with a current outstanding balance of $150,000." In that verified complaint, she requested the district court to divest Mr. Dees of his interest in the marital Property, including the marital HELOC debt. The court eventually agreed and awarded Ms. Godfrey the Property, including the HELOC debt. This evidence is Ms. Godfrey's sworn testimony affirming the HELOC debt was a valid debt and was a marital debt. It shows her acknowledgement the $150,000 was advanced to Respondent and her then-husband for their use in the marriage. Also,

she represented in that proceeding that she had personally made several monthly payments under the HELOC. In sum, this evidence is proof of ratification.

Additionally, there is evidence in the record tending to show that Ms. Godfrey and her then-husband requested that RBC Centura subordinate its 2003 HELOC deed of trust to deeds of trust subsequently recorded to secure term mortgage loans. For instance, in 2007, Borrowers' 2002 term mortgage loan came due. They refinanced that debt with a new term mortgage loan, which appeared to be conditioned by the new lender on the 2003 HELOC deed of trust being subordinated to the new 2007 term mortgage loan. Indeed, the record reflects that RBC Centura did subordinate its 2003 HELOC deed of trust to Borrowers' 2007 term loan for Borrowers' benefit. RBC Centura's successor, again, subordinated its 2003 HELOC deed of trust in 2013 when Borrowers again refinanced its term mortgage loan, this time with Carolina Farm Credit.

Further, there is evidence in the record that shows that the proceeds of a previous HELOC loan was satisfied with the 2003 HELOC, representing evidence that Ms. Godfrey benefited from the 2003 HELOC.

Ms. Godfrey does not deny the validity of these other loans.

In sum, we view the evidence as *conclusively* establishing that Ms. Godfrey, through her actions, ratified the 2003 HELOC note and deed of trust, such that she is bound by those documents, notwithstanding that she might not have actually signed those documents herself.

III.    Conclusion

We conclude that the superior court erred by failing to find the existence of a valid debt against Ms. Godfrey and of the Trustee's right to foreclose. We, therefore, reverse the order of the superior court and remand with instructions to enter an order authorizing foreclosure under the 2003 HELOC deed of trust.

REVERSED.

Judge TYSON concurs.

Judge HAMPSON dissents by separate opinion.

No. COA24-100 –*In re: Godfrey*

HAMPSON, Judge, dissenting.

Both the Clerk of Orange County Superior Court and—following a *de novo* hearing in Superior Court—the trial court found there was insufficient evidence to support a conclusion Respondent ratified the Deed of Trust or the HELOC Debt. Properly applying the standard of review in this case, the trial court's findings are supported by evidence in the Record and, in turn, support the conclusion Respondent did not ratify the HELOC Debt. *See In re Garvey*, 241 N.C. App. 260, 263-64, 772 S.E.2d 747, 750 (2015) (Where the trial court properly undertakes a de novo review, "this Court decides only 'whether competent evidence exists to support the trial court's findings of fact and whether the conclusions reached were proper in light of the findings.' " (quoting *In re Foreclosure of Gilbert*, 211 N.C. App. 483, 487, 711 S.E.2d 165, 169 (2011)) (internal quotation marks omitted)).

Ultimately, in this case, the dispositive issue is whether there is evidence which supports the trial court's conclusion Respondent did not ratify the HELOC Debt and Deed of Trust. This is so even presuming—without deciding—ratification is validly raised in these proceedings by Petitioner. The trial court directly addressed this very question, finding even if ratification was applicable:

> 11.   The doctrine of ratification, raised by [Petitioner], does not bar or preclude [Respondent] from challenging and contesting the validity of the indebtedness evidenced by, and the ability of [Petitioner] to foreclose under, the Loan Documents.
>
> 12.   There is no evidence, in the record or otherwise, that

*HAMPSON, J., dissenting*

[Petitioner] ratified the transaction evidenced by the Loan Documents through her actions, conduct, or otherwise. Specifically, there is no evidence that [Petitioner] (i) received, directly or indirectly, any portion of the proceeds from the Loan, (ii) was aware—and had knowledge—of her forged signature on the Loan Documents prior to the commencement of the above-captioned special proceeding, and (iii) benefitted—directly or indirectly—from the transaction evidenced by the Loan Documents. No portion of the proceeds generated and extended pursuant to the Loan were utilized to purchase the Property.

Indeed, the trial court's Findings generally track similar findings made by the trial court and relied on by this Court in *Espinosa*:

The superior court found no evidence that any portion of the loan proceeds passed to the Espinosas, or that they knew of the loan transactions until the foreclosure was instituted and those findings are supported by competent evidence. Further, there was no evidence that Charles E. Cagle acted as agent of the Espinosas in obtaining the loan secured by their real property, and no evidence that any legal obligation of the Espinosas was satisfied from the loan proceeds. Further, the trial court found that none of the loan proceeds were used to purchase the real property deeded to the Espinosas, and that they did not directly or indirectly benefit from the loan transactions in any way. Those additional findings are also supported by competent evidence of record. The trial court concluded that the Bank failed to prove by the greater weight of the evidence that "Jaime [sic ] and Cheri Espinosa, or either of them, knew all of the facts material to the loans in question prior to the time of the institution of this foreclosure proceeding." Further, the trial court concluded that the Espinosas "did not ratify any of the transactions or documents associated with the loans in question."
. . . .

Here, there is no finding that Charles E. Cagle, or anyone else, acted as an agent for the Espinosas in the loan

> transactions; nor that they received, directly or indirectly, any of the loan proceeds; nor that they had any knowledge that anyone had signed their names on the loan documents until the foreclosure proceeding was instituted against them.

*Espinosa v. Martin*, 135 N.C. App. 305, 309-10, 520 S.E.2d 108, 111-12 (1999). There, this Court held these findings—themselves supported by evidence—supported the determination the Espinosas had not ratified the loan transactions in that case. I would conclude, here, the trial court's findings also support its conclusion Respondent did not ratify the loan and deed of trust in this case.

Moreover, the evidence in the Record supports the trial court's Findings in the case *sub judice*. Indeed, the majority takes no direct issue with any of the trial court's Findings in this regard. Instead, the majority points to two items in the Record it asserts are "conclusive proof of ratification." However, reliance on either item is unavailing. Certainly neither item is conclusive proof—separately or together— justifying overturning the trial court's role as fact-finder.

First, reliance on the subsequent subordination agreements is a red herring. Respondent is not contesting the subsequent loans that were given priority over the HELOC. The Record is clear Respondent was *not* a signatory to the subordination agreements themselves. Petitioner points to no evidence Respondent was even aware of the subordination agreements. Moreover, nothing about the subordination of the HELOC Debt provides any determination as to its validity or demonstrates the unequivocal intent by Respondent to affirm the subordinated Debt. *See Espinosa*,

3

135 N.C. App. at 309, 520 S.E.2d at 111 ("[T]o constitute ratification as a matter of law, the conduct must be consistent with an intent to affirm the unauthorized act and inconsistent with any other purpose." (internal quotations and citation omitted) (alteration in original)).

Petitioner, and the majority, also relies on the earlier equitable distribution proceedings—such as they were. Petitioner argues those proceedings constitute an affirmation the HELOC Debt was both a valid debt and marital debt. However, the equitable distribution proceedings established no such thing, and this contention is wholly unsubstantiated by the Record.

Again, the trial court also addressed this issue in the context of Petitioner's estoppel claims, in part noting specifically: "The issues [] raised, determined, and actually litigated in the Domestic Action did not include: (1) whether the indebtedness arising under the Loan Documents was valid[.]" The trial court further found Respondent "has not taken any position inconsistent with any position previously taken or maintained in the Domestic Action" and "did not assert, during the Domestic Action or otherwise, that she signed and executed the Loan Documents, or that the Loan Documents and indebtedness arising therefrom, were valid, enforceable, and complied with the applicable requirements of North Carolina law[.]"

Review of the equitable distribution proceeding documents in the Record before us underscores the trial court's findings. First, it is clear there was no allegation, proof, or judicial determination in the equitable distribution proceeding that the

4

HELOC was a "valid" debt. The issue of the debt's validity or invalidity was plainly not at issue.

Crucially, moreover, there is no determination in the equitable distribution proceeding the HELOC Debt is "marital debt." To the contrary, the verified pleading, interim distribution, ultimate equitable distribution judgment, and order transferring the property each only describe the debt as "jointly held". This is significant because the mere fact debt is "jointly held" does not automatically mean the debt constitutes marital debt. It is fundamental that "[t]itle is not controlling in determining whether an asset is marital property[.]" *Hill v. Hill*, 229 N.C. App. 511, 518, 748 S.E.2d 352, 358 (2013); *Richter v. Richter*, 271 N.C. App. 644, 659, 845 S.E.2d 99, 109 (2020) ("[T]reatment of property for tax purposes or in another legal context may not control its classification for purposes of equitable distribution." (citation omitted)).[1]

To the contrary, the facts of this case all point to the conclusion the "jointly held" HELOC Debt was not, in fact, marital debt. " 'Regardless of who is legally obligated for the debt, for the purpose of an equitable distribution, a marital debt is

---

[1] This, to be sure, was likely a product of how the equitable distribution proceeding arose in the first place. Respondent's former husband allegedly abandoned her and made his whereabouts unknown contemporaneously to being investigated by the Securities and Exchange Commission for misappropriating funds from his company. Respondent's former husband did not appear in the equitable distribution action. The result was quite limited fact-finding in the equitable distribution action. Respondent required the marital home which secured the debt be distributed to her in order to refinance or extinguish any debts allegedly secured by that property. This is a far cry from ratifying the HELOC Debt. To the contrary, the pleadings and orders in the equitable distribution reflect an intent to expressly not resolve the issue of whether the HELOC was marital debt or not.

defined as a debt incurred during the marriage for the *joint benefit* of the parties.' " *Wornom v. Wornom*, 126 N.C. App. 461, 465, 485 S.E.2d 856, 859 (1997) (emphasis in original) (quoting *Geer v. Geer*, 84 N.C. App. 471, 475, 353 S.E.2d 427, 429 (1987)). Here, there is no evidence of any joint benefit received by the marital estate—or even Respondent herself—from the HELOC Debt. Rather, there have been a number of judicial fact-finding determinations there was no such joint benefit or benefit to Respondent.

Thus, the evidence of Record supports the trial court's factual Findings. Those Findings, in turn, support the trial court's Conclusion Respondent did not ratify the HELOC Debt or Deed of Trust securing the debt. Consequently, the trial court's order denying foreclosure under N.C. Gen. Stat. § 45-21.16(d) on the basis there was insufficient evidence of a valid debt or a right to foreclose under the Deed of Trust is properly affirmed. Accordingly, I respectfully dissent.