JOHN P. DORTON v. BETTY B. DORTON

No. 8514DC75

(Filed 19 November 1985)

1. **Divorce and Alimony § 30— equitable distribution—dental license as separate property**

   The trial court should have identified plaintiff's dental license as separate property and should have considered it as one of the factors affecting equitable distribution. G.S. 50-20(b)(2); G.S. 50-20(c)(1).

2. **Divorce and Alimony § 30— equitable distribution—family corporation—disregard of corporate entity—noncompliance with corporate formalities**

   The trial court could not properly disregard the corporate entity of a family corporation in favor of plaintiff husband for equitable distribution purposes because of noncompliance with corporate formalities where plaintiff acquiesced in the formation of the corporation, knew what property belonged to the parties in their individual capacities and what property belonged to their corporation, and shared in the duty to observe corporate formalities as a corporate director, officer and shareholder.

3. **Divorce and Alimony § 30— equitable distribution—family corporation—disregard of corporate entity—factors properly considered**

   In determining whether to disregard the corporate entity of a family corporation in favor of plaintiff husband for equitable distribution purposes on the ground of defendant's domination of the corporation to the detriment of plaintiff, the trial court could properly consider defendant's lack of accountability and defendant's mismanagement of corporate property by allowing it to deteriorate and not realizing its full rental potential. However, the evidence was insufficient to support findings by the court that one piece of property owned by the corporation had been sold by defendant to her mother at a foreclosure sale for less than its fair market value and that defendant fraudulently caused the corporation to issue two notes and deeds of trust to her mother. Therefore, the cause is remanded for a new hearing and consideration of whether to disregard the corporate entity based on relevant factors properly supported by the evidence.

4. **Divorce and Alimony § 30— equitable distribution—dental practice as marital property**

   The trial court erred in failing to identify and treat plaintiff husband's dental practice, including its goodwill component, as marital property for equitable distribution purposes. The trial court has the authority under G.S. 8C-1, Rule 706 to appoint an expert witness to appraise the goodwill and other value of plaintiff's practice.

5. **Divorce and Alimony § 30— equitable distribution—improper change of child support**

   The trial court erred in altering a writ of possession of the family home as child support in its equitable distribution judgment since a child support order

may be modified or vacated only after an equitable distribution, G.S. 50-20(f), and only after a finding of changed circumstances, G.S. 50-13.7.

**6. Divorce and Alimony § 30— equitable distribution—marital fault not considered**

The record did not show that the trial court considered marital fault as a factor in distributing marital property although the court read the pleadings in a companion case in which the complaint alleged fault on defendant's part as a basis for divorce.

**7. Divorce and Alimony § 30— equitable distribution—work outside home and child-rearing by one spouse**

Under G.S. 50-20(c)(12) it was within the trial court's equitable powers in distributing marital property to consider that one spouse worked outside the home *and* participated in child-rearing and homekeeping while the other spouse only participated in child-rearing and homekeeping.

**8. Divorce and Alimony § 30— equitable distribution—requiring wife to furnish information for taxes**

A provision of an equitable distribution judgment ordering defendant wife "to cooperate immediately in the furnishing of information and filing of tax returns for 1981 and 1982" only required defendant to provide all information she has that will assist plaintiff in filing his 1981 and 1982 tax returns and does not improperly require defendant to file joint returns with plaintiff.

**9. Divorce and Alimony § 30— equitable distribution—sale of marital home—forbidding commission by either party**

The trial court had authority under G.S. 50-20(c)(12) to forbid either party to its equitable distribution order from receiving a commission or broker's fee on the sale of the marital home.

APPEAL by defendant from *LaBarre, Judge.* Judgment entered 6 September 1984 in District Court, DURHAM County. Heard in the Court of Appeals 17 September 1985.

Plaintiff and defendant were married to each other in 1955. Five children were born of the marriage, one of whom is still a minor. The parties separated on 10 March 1982. The trial court entered an order in plaintiff's civil action number 82CVD01464 on 24 September 1982 which (1) denied defendant's claim for alimony pendente lite, (2) gave primary custody of the two then minor children to defendant, (3) granted a writ of possession in the family residence to the two minor children, and (4) required plaintiff to pay health insurance for the minor children, child support, and the mortgage payments on the family residence. In response to motions in the cause after one of the children became emancipated, the trial court on 14 October 1983 reduced plaintiff's child sup-

port obligations and continued a writ of possession in the family residence for the remaining minor child until she should reach the age of 18.

Plaintiff also filed civil action number 83CVD01436 in which he sought an absolute divorce and equitable distribution of the marital property. The trial court entered judgment of absolute divorce based on one year's separation on 17 August 1983. The two civil actions were consolidated by stipulation of the parties, and on 6 September 1984 the trial court entered the equitable distribution order which is the subject of this appeal by defendant.

*Mount, White, King, Hutson & Carden, by Elizabeth R. Stuckey and William O. King, for plaintiff appellee.*

*Susan H. Lewis for defendant appellant.*

WEBB, Judge.

Defendant challenges the trial court's findings and conclusions in sixteen questions presented on appeal. We vacate the judgment and remand the cause for a new hearing on equitable distribution due to the errors discussed below. In all fairness to the trial court we note that it did not have the benefit at the time judgment was entered of much of the case law on equitable distribution.

The trial court must identify the property owned, evaluate it, and order its distribution in an equitable distribution action pursuant to G.S. 50-20. *Capps v. Capps*, 69 N.C. App. 755, 318 S.E. 2d 346 (1984). The findings indicate that the parties acquired during their marriage the following holdings: (1) rental property at 823 Buchanan Boulevard in Durham, (2) lots 17 and 18 in Willowhaven subdivision, (3) lot 14 in Willowhaven subdivision, (4) lot 16 in Willowhaven subdivision, (5) an Emerald Isle beach house, (6) rental property at 201 Albemarle Street in Durham, (7) the family residence in Willowhaven subdivision, (8) an office building at 1306 Broad Street in Durham, (9) personal property in the family residence, (10) personal property in the beach house, (11) office equipment in the Broad Street office, and (12) a vacant lot on Buchanan Boulevard. The parties had transferred the beach property, Willowhaven lots 17 and 18, and the Albemarle and both Buchanan properties to a family corporation formed in 1981 and

known as B J & K Investments, Ltd. The trial court concluded that all of the aforementioned property was marital property, except for the vacant lot on Buchanan Boulevard which had been sold, and it found and concluded that neither party owned separate property.

[1] The finding and conclusion that neither party owned separate property constitutes error on the face of the record which we point out, despite the lack of an exception by either party, to guide the trial court upon remand. The evidence shows that plaintiff was a practicing dentist. G.S. 50-20(b)(2) classifies professional licenses as separate property. G.S. 50-20(c)(1) requires the trial court to consider the property of each party when making a property division. Thus the trial court must identify plaintiff's dental license as separate property. *Poore v. Poore*, 75 N.C. App. 414, 423-24, 331 S.E. 2d 266, 272-73 (1985). The trial court then must consider the dental license as one of the factors affecting equitable distribution. *Id.*

In the course of identifying and distributing the marital property, the trial court disregarded the corporate entity of B J & K Investments on the grounds that the corporation was a "sham." The trial court then distributed the assets of the corporation as marital property, but held defendant personally liable for $23,000 worth of notes and deeds of trust she had executed, apparently in the name of the corporation, after the parties separated. This part of the judgment constitutes reversible error because several of the reasons cited by the trial court for disregarding the corporate entity are unsupported by the evidence or are irrelevant.

As R. Robinson, *North Carolina Corporation Law and Practice*, § 2-12 (3d ed. 1983), observes,

> Disregarding the corporate entity is an equitable remedy imposed in a particular case only to prevent or rectify an abuse of the corporate privilege or to avoid some other injustice. The remedy is exercised reluctantly and cautiously, and the burden of establishing a basis for invoking it rests on the party asserting the claim.

Robinson identifies four principal factors that support a decision to disregard a corporate entity: (1) inadequate capitalization; (2) noncompliance with corporate formalities; (3) complete domination

and control of the corporation so that it has no independent identity; and (4) excessive fragmentation of a single enterprise into separate corporations. *Id.* Other factors may exist, depending on the facts of the case. *See Glenn v. Wagner*, 313 N.C. 450, 458, 329 S.E. 2d 326, 332 (1985); *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F. 2d 681 (4th Cir. 1976). The trial court's findings in the present case relate to Robinson's second and third factors.

[2] With regard to noncompliance with corporate formalities, the trial court found that defendant never issued any stock, never paid any franchise tax, never filed a corporate tax return, and held only one meeting during the existence of the corporation. Defendant was the president, a director, and 51% shareholder or owner of B J & K Investments, Ltd. Plaintiff was a director, vice president, and 40% shareholder. Their daughter Katina was secretary and 9% shareholder until 22 February 1984, when she resigned from the corporation and gave her ownership interest in equal parts to her parents.

We fail to see how noncompliance with the corporate formalities mentioned above could justify disregarding the corporate entity in favor of plaintiff. Plaintiff acquiesced in the formation of the corporation. He knew what property belonged to the parties in their individual capacities and what property belonged to their corporation. As a director, officer, and shareholder he bore responsibility for observance of corporate formalities along with defendant. The present case is thus distinguishable from the more typical situation where a person unassociated with a corporation and unaware of its existence may hold an agent of the corporation individually liable on the grounds that the plaintiff was led to believe he was dealing with the agent in an individual capacity rather than in a corporate capacity due to the noncompliance with corporate formalities. *See, e.g., Bone International, Inc. v. Brooks*, 304 N.C. 371, 283 S.E. 2d 518 (1981). *Equipment Co. v. DeBruhl*, 28 N.C. App. 330, 220 S.E. 2d 867, *disc. review denied*, 289 N.C. 451, 223 S.E. 2d 160 (1976), presents a more analogous situation. In *Equipment Co.* plaintiff knew or should have known that defendant was acting as president of his corporation. This Court held that it would not disregard the corporate entity for noncompliance with corporate formalities:

> Furthermore, we do not see merit in plaintiff's contention that LaFayette Transportation Service is merely defendant's alter ego. Plaintiff's evidence establishes that defendant's den is the corporate office, that defendant has not read the corporate by-laws, and that he is not familiar with the corporation's tax matters. This is not sufficient evidence to show that the corporation was "ignored as a separate entity," and it is insufficient to apply the alter ego doctrine and hold defendant personally liable.

*Id.* at 333, 220 S.E. 2d at 869. Plaintiff in the present case not only knew of the existence of the corporation, he shared in the duty to observe corporate formalities. He could not have been deceived by the noncompliance with formalities, so the noncompliance with corporate formalities is irrelevant in this case. Plaintiff will not be allowed to disregard the corporate entity on that basis.

[3] The trial court's findings also refer to several instances of mismanagement and fraudulent activity by defendant as a basis for disregarding the corporate entity. These findings are best categorized under the "principal factor" identified in Robinson, *supra*, as "complete domination and control of the corporation so that it has no independent identity." The North Carolina Supreme Court has provided a broad rule applicable to this factor:

> [W]hen . . . the corporation is so operated that it is a mere instrumentality or *alter ego* of the sole or dominant shareholder and a shield for his activities in violation of the declared public policy or statute of the State, the corporate entity will be disregarded and the corporation and the shareholder treated as one and the same person. . . . (Citations omitted.)

*Henderson v. Finance Co.*, 273 N.C. 253, 260, 160 S.E. 2d 39, 44 (1968). Such a drastic remedy should be invoked only in an extreme case where necessary to serve the ends of justice. Robinson, *supra*.

As one example of defendant's domination through mismanagement, the trial court found that defendant had not fulfilled her fiduciary obligations with respect to accountability. The record is replete with evidence to support this finding. Generally, a lack of accountability to other shareholders would not, by itself, be suffi-

cient grounds to pierce the corporate veil. G.S. 55-37 and 55-38 provide an adequate remedy at law to enforce accountability, so the court need not resort to the more drastic equitable remedy of denying the existence of the corporation. However, the trial court was entitled to weigh defendant's lack of accountability in conjunction with other evidence of defendant's complete domination and control of the corporation.

The trial court also found that defendant mismanaged corporate property by allowing it to deteriorate and not realizing the full rental potential from it. Again, the trial court properly considered this as one of several factors demonstrating defendant's domination of the corporation to the detriment of plaintiff as a minority shareholder, although it is questionable whether this finding alone could justify piercing the corporate veil in equity since less drastic remedies are available at law under G.S. 55-125.1.

The trial court further found that, "Another piece of property on Buchanan Boulevard which had been acquired by the parties was somehow sold to the defendant's mother for less than its fair market value without any authority whatsoever from plaintiff, either individually or as a principal of the corporation." Presumably this piece of property had belonged to the corporation and was sold by defendant. Evidence in the record indicates this property was located at 811 Buchanan Boulevard, that it was sold to defendant's mother at a foreclosure proceeding for $7,500, and that it was worth between $12,000 and $16,000. Neither this evidence nor the finding quoted above support the trial court's decision to disregard the corporate entity. Nothing in the record shows that the sale was commercially unreasonable, that there was an usurpation of corporate opportunity, or that there was any overreaching on defendant's part.

As a basis for declaring the corporation a sham, the trial court also found,

> [D]efendant fraudulently caused the corporation to issue a note and deed of trust for $15,000.00 against the beach property to her mother. She also caused the fraudulent issuance of a note and deed of trust to her mother for $8,000.00 against the Albemarle Street property. In both instances, the deeds of trust evidencing the indebtedness were signed by a

Gail Wheeler. Gail Wheeler is a legal secretary who has never been an officer of BJK Corporation and has never had any interest of any nature whatsoever in said corporation. Neither of said transactions was authorized by the plaintiff or other officer of the so-called corporation, and both transactions were conducted entirely by defendant.

This finding is not supported by the evidence. No evidence appears in the record to show that the notes and deeds of trust defrauded the corporation or plaintiff. Plaintiff has not presented any evidence that the loan proceeds were diverted for improper purposes, that corporate assets were encumbered without good reason, or that the notes and deeds of trust in any way harmed the corporation. We also note for purposes of remand that the issue of defendant's authority to execute the notes and deeds of trust on behalf of the corporation may depend on the bylaws or the business practice of the corporation. *See* G.S. 55-34(b); *Tuttle v. Building Corp.*, 228 N.C. 507, 512, 46 S.E. 2d 313, 317 (1948).

In sum, several of the reasons relied upon by the trial court to declare the corporation a sham were not supported by the evidence, or were not relevant. Other reasons were supported by the evidence. The cause is remanded for a new hearing and consideration of whether to disregard the corporate entity based on all the relevant factors properly supported by the evidence. In reconsidering this issue the trial court should determine whether defendant's domination of the corporation facilitated wrongful acts which were detrimental to plaintiff, and which can only be corrected by making defendant liable in equity for the notes and deeds of trust she executed in the corporation's name. The North Carolina Supreme Court has recently provided the following guidance on such matters: "[C]ourts will disregard the corporate form or 'pierce the corporate veil,' and extend liability for corporate obligations beyond the confines of a corporation's separate entity, whenever necessary to prevent fraud or to achieve equity." *Glenn v. Wagner, supra*, at 454, 329 S.E. 2d at 330 (1985). Furthermore,

It should be remembered that the theory of liability under the instrumentality rule is an equitable doctrine. Its purpose is to place the burden of the loss upon the party who should be responsible. Focus is upon reality, not form, upon the operation of the corporation, and upon the defendant's re-

lationship to that operation. It is not the presence or absence of any particular factor that is determinative. Rather, it is a combination of factors which, when taken together with an element of injustice or abuse of corporate privilege, suggest that the corporate entity attacked had "no separate mind, will or existence of its own" and was therefore the "mere instrumentality or tool" of the dominant [shareholder].

*Id.* at 458, 329 S.E. 2d at 332. "Each case will be treated as *sui generis* with the burden on the plaintiff to establish the existence of factors that would justify disregarding the corporate entity." *Id.* at 459, 329 S.E. 2d at 333. "Since the issue is one of fact, the trial court should take pains to spell out in its instructions [or findings] the specific factors to be considered in determining whether the corporate entity should be disregarded." *Id.*

If the trial court finds that the corporate entity must be disregarded, the real property belonging to the corporation will still be marital property since it was acquired by the parties during their marriage. G.S. 50-20(b)(1). The corporation may nonetheless remain liable to defendant's mother on the notes and deeds of trust executed by defendant in the name of the corporation after the parties separated if defendant's mother is an innocent third party creditor and the provisions of G.S. 55-36(e) apply. *See American Clipper Corp. v. Howerton,* 311 N.C. 151, 168-69, 316 S.E. 186, 195-96 (1984). If defendant is determined to be individually liable for the notes and deeds of trust, then defendant's one-half undivided interest in the property after divorce but before equitable distribution would be subject to the liens of the deeds of trust. *Branch Banking and Trust Co. v. Wright,* 74 N.C. App. 550, 328 S.E. 2d 840 (1985).

If the corporate entity is not disregarded, then the ownership interest of each party in the corporation would be marital property subject to equitable distribution. Because equitable distribution must be based on the net value of the parties' ownership interests at the time of separation, G.S. 50-21(b) and *Alexander v. Alexander,* 68 N.C. App. 548, 315 S.E. 2d 772 (1984), the encumbrances on the Albemarle Street property and the beach property would have to be accounted for as an additional equitable factor under G.S. 50-20(c)(12).

With respect to the notes and deeds of trust issued by defendant in the corporation's name to defendant's mother, the trial court's finding that they are null and void and its conclusion that they must be cancelled are error. Defendant's mother was not a party to this action, and the trial court cannot deprive her of rights as a creditor without affording her the due process rights to notice and an opportunity to be heard.

[4] Defendant contends the trial court erred in not identifying and treating plaintiff's dental practice as marital property. We agree. The office building and equipment used by plaintiff in his dental practice were accounted for in the judgment, but there was no finding as to the value of the intangible aspects of the practice. This Court recently held that "goodwill is an asset that must be valued and considered in determining the value of a professional practice for purposes of equitable distribution." *Poore v. Poore, supra*, at 420-21, 331 S.E. 2d at 271. The dental practice, including its goodwill component, must be valued as of the date of separation of the parties since this action was pending after the effective date of the amended version of G.S. 50-21(b), and the trial court may use any reasonable valuation method supported by the evidence since there is no single correct way to value a professional practice. *Poore, supra; Weaver v. Weaver*, 72 N.C. App. 409, 324 S.E. 2d 915 (1985). Plaintiff's testimony, as summarized in the record, is inconclusive as to the value of his practice:

> Regarding the goodwill value of my professional practice, if I would sell my dental practice to another dentist coming into the practice, I don't know, I doubt if anybody would buy it right now. I don't have a patient list for somebody to buy hoping that they would keep half of them. I really don't know.

However, there was evidence as to the recent earning history of the dental practice, and plaintiff's age, health, and professional experience. Moreover, the trial court has the authority under G.S. 8C-1, Rule 706 to appoint an expert witness to appraise the goodwill and other value of plaintiff's practice. Use of G.S. 8C-1, Rule 706 may be necessary in this type of case since the trial court must value the goodwill of a professional practice for purposes of equitable distribution, and valuation of goodwill "should be made

with the aid of expert testimony." *Poore, supra,* at 421, 331 S.E. 2d at 271.

[5] Defendant contends the trial court erred in dissolving a "writ of sequestration" in the parties' marital home. In the 14 October 1983 order the trial court had granted a writ of possession in the family residence to the parties' minor child until age 18. The equitable distribution order of 6 September 1984 terminated the writ of possession on the basis of the following finding of fact:

> The Willowhaven home in which defendant and one 14-year-old child reside under a writ of possession, has 4,400 square feet. The monthly payments on the home are over $1,000.00. The date of separation equity in the home was $105,949.46, and the present equity is $116,501.27. It is neither reasonable nor feasible that this property continue to be tied up under a writ possession for four more years for the benefit of one minor child.

The evidence does not support this finding with respect to the amount of the monthly house payment: plaintiff testified that the payment was $546 per month, while defendant introduced evidence that it was $568. Even if the $143 per month for taxes and insurance is added to these figures, they bear no reasonable relation to the $1,000 per month finding of the trial court.

More importantly, the trial court erred in altering the child support provision of a previous order in its equitable distribution judgment. The writ of possession was a child support provision intended to benefit the parties' minor child. A child support order may be modified or vacated only *after* an equitable distribution. G.S. 50-20(f); *Capps v. Capps,* 69 N.C. App. 755, 318 S.E. 2d 346 (1984). Modification of child support must be vacated and remanded where, as here, it is part of the equitable distribution judgment and thus appears to have been decided and entered at the same time as equitable distribution, rather than after equitable distribution as required by G.S. 50-20(f).

Finally, G.S. 50-20(f) provides that an order for child support, such as the writ of possession in the present case, may be modified or vacated after an equitable distribution *pursuant to G.S. 50-13.7.* G.S. 50-13.7 requires that there be a substantial change of circumstances before a child support order may be modified. The

judgment terminating the writ of possession is not supported by any findings as to a change of circumstances, and therefore must be vacated.

Defendant next contends that the trial court erred in dividing the marital property without considering and assigning liability for all the parties' marital debts. G.S. 50-20(c)(1) states that the court shall consider the liabilities of each party when making an equitable distribution. Without deciding whether the trial court erred in not finding certain liabilities of defendant, we note for purposes of remand that credible evidence of each party's liabilities "at the time the division of property is to become effective" must be reflected in the findings and property distribution.

Defendant assigns error to the trial court's decision holding her responsible for the $23,000 debt on the notes and deeds of trust to her mother, to the unfairness of the division of the parties' marital property, and to the form of the judgment. We do not address these issues since they are unlikely to arise in the same manner on remand.

[6] Defendant contends the trial court improperly considered marital fault because one finding states that the trial court considered the pleadings, including a complaint in a companion case that alleged fault on defendant's part as a basis for divorce. We find no error. The parties stipulated that the cases could be consolidated, so the pleadings were properly before the trial court. The fact that it read the pleadings alleging marital fault in no way means that it found that allegation credible or relied upon it. Nothing in the findings or conclusions, and no comment by the trial court in the record, indicates that it relied upon marital fault as a factor in distributing the marital property.

[7] Defendant excepted to the following finding:

> Throughout the marriage, each of the parties participated in both the rearing of the family and the keeping of the home. Plaintiff's participation in child-rearing and home-keeping was in addition to his efforts in the practice of dentistry which led to the acquisition of practically all of the marital assets.

Defendant maintains that this finding erroneously credits plaintiff with providing the marital property when in fact the earnings

Dorton v. Dorton

from his dental practice, with which the parties obtained their property, were themselves marital property. This argument misconstrues the finding. The finding, which is supported by evidence in the record, focuses on plaintiff's greater contributions to the marriage. Under G.S. 50-20(c)(12) it is certainly within the trial court's equitable powers to consider that one spouse worked outside the home *and* participated in child-rearing and homekeeping while the other spouse *only* participated in child-rearing and homekeeping. *See also* G.S. 50-20(c)(6), which requires the trial court to consider such efforts by a spouse when title to marital property is not in that spouse's name.

[8] Defendant objects to the part of the judgment ordering her "to cooperate immediately in the furnishing of information and filing of tax returns for 1981 and 1982." She claims the trial court cannot force her to sign a joint return with plaintiff. She also argues that the findings to the effect that plaintiff's tax burden has been increased by her failure to provide information about the family corporation are not based on competent evidence. We disagree. First of all, we interpret the trial court's order to mean that defendant must provide all information she has that will assist plaintiff in filing his 1981 and 1982 tax returns, but not that defendant must file a joint return with plaintiff. Second, there is sufficient competent testimony from plaintiff to support the findings that defendant's refusal to share certain accounting information has prevented plaintiff from reducing his tax liability.

[9] Defendant lastly contends that the trial court erred in forbidding either party from receiving a commission or broker's fee on the sale of the marital home. This order is directed primarily at defendant since she is a licensed real estate broker. We find no error in this part of the judgment. If the parties can sell the home by themselves, without paying a real estate commission, then the net proceeds of sale will be greater and there will be more marital property for equitable distribution. This is an equitable factor that the trial court may consider under G.S. 50-20(c)(12).

Remanded for further proceedings consistent with this opinion.

Judges BECTON and MARTIN concur.