KEENER LUMBER COMPANY, INCORPORATED, Plaintiff v. LEON W. PERRY, III
AND CONN TRUCKING, INC., Defendants

No. COA00-1525

(Filed 5 March 2002)

**1. Bankruptcy— claim brought by creditor against director of corporation—constructive fraud—unfair and deceptive trade practices—subject matter jurisdiction**

The trial court did not err in a constructive fraud and unfair and deceptive trade practices case by denying a motion to dismiss by defendant individual director of a bankrupt corporation

based on an alleged lack of subject matter jurisdiction even though plaintiff creditor filed a proof of claim in the bankruptcy proceeding against the bankrupt corporation, because: (1) a claim brought by a creditor against a director of a corporation alleging that the director has committed constructive fraud by breaching a fiduciary duty owed directly to the creditor is a claim founded on injuries peculiar or personal to the individual creditor and thus is a claim that belongs to the creditor and not the corporation; and (2) the trustee in bankruptcy does not have authority to bring this claim under 11 U.S.C. § 541 since plaintiff's claim does not belong to the bankrupt corporation and is not part of the bankruptcy estate.

2. **Fraud—constructive— director of corporation's fiduciary duty to creditors—failure to adequately declare and explain the law**

The trial court erred by failing to adequately declare and explain the law to the jury in its instructions on a constructive fraud claim and by failing to submit to the jury issues which properly frame the essential factual questions as required by N.C.G.S. § 1A-1, Rule 51(a) in an action by plaintiff creditor to recover, from defendant individual director of a bankrupt corporation, the debts of the bankrupt corporation owed to plaintiff for the purchase of lumber, because: (1) the trial court instructed the jury that a director of a corporation has a fiduciary duty to all creditors to treat them fairly and equally while the corporation is insolvent, without sufficiently explaining the circumstances under which the law imposes upon directors a fiduciary duty to creditors; (2) the first issue presented to the jury did not adequately frame the question of whether defendant director of the corporation owed plaintiff creditor a fiduciary duty; (3) the jury should have been specifically instructed that directors of a corporation owe a fiduciary duty to creditors of the corporation only where there are circumstances amounting to a winding-up or dissolution of the corporation, that balance sheet insolvency alone is insufficient to trigger the fiduciary duty, and that various factors may be considered in determining whether there existed circumstances amounting to a winding-up or dissolution; (4) although the trial court made an accurate statement of the law regarding general fiduciary duties, the better approach would be to simplify the issue on the jury sheet and supplement the issue with an instruction more carefully tailored to the specific context; and (5)

KEENER LUMBER CO. v. PERRY

[149 N.C. App. 19 (2002)]

although the trial court properly explained the issue of damages, it should have supplemented the instructions with additional information.

### 3. Unfair Trade Practices— business relationship—intent to pay creditor—preferential payments to creditors

The trial court erred by determining as a matter of law that defendant individual director of a corporation's conduct in his business relationship with plaintiff creditor amounted to an unfair and deceptive trade practice under N.C.G.S. § 75-1.1, because: (1) the jury determined that defendant had intended to pay for the lumber purchased from plaintiff; and (2) although the jury determined that defendant made preferential payments to creditors other than plaintiff, plaintiff did not base its unfair and deceptive trade practices claim upon the allegation that defendant made preferential payments to other creditors.

### 4. Fraud; Racketeer Influenced and Corrupt Organizations— motion to dismiss—sufficiency of evidence

The trial court did not err by dismissing all claims against defendant corporation and by dismissing the fraud claim and racketeer influenced and corrupt organizations (RICO) claim against defendant individual director of the corporation.

### 5. Corporations— piercing the corporate veil—director of corporation

The trial court did not err by refusing to instruct the jury on the piercing the corporate veil doctrine, because: (1) the complaint does not allege that defendant individual director of a bankrupt corporation should be held liable for the bankrupt corporation's acknowledged debt to plaintiff creditor based upon defendant individual's complete domination of the bankrupt corporation; and (2) the complaint does not allege any torts committed by the bankrupt corporation for which plaintiff might seek to hold defendant individual liable.

Appeal by defendant Leon W. Perry, III from judgment entered 21 July 2000 by Judge Knox V. Jenkins, Jr. in Johnston County Superior Court. Heard in the Court of Appeals 8 November 2001.

*Mast, Schulz, Mast, Mills & Stem, P.A., by George B. Mast, Bradley N. Schulz and David F. Mills, for plaintiff-appellee.*

*Kennedy, Covington, Lobdell & Hickman, L.L.P., by John L. Sarratt and Amie Flowers Carmack, for defendant-appellant Leon W. Perry, III.*

HUNTER, Judge.

Defendant Leon W. Perry, III ("Perry") appeals from the trial court's judgment (1) upholding a jury verdict that Perry committed constructive fraud, and (2) determining as a matter of law that Perry's conduct in his business relationship with Keener Lumber Company, Inc. ("plaintiff") amounted to an unfair and deceptive practice. We affirm in part, reverse in part, and remand in part for a new trial on plaintiff's constructive fraud claim.

This case involves three corporations and one individual. The first corporation is plaintiff Keener Lumber Company, a North Carolina corporation that buys timber and sells lumber products. The second corporation is Perry Builders Outlet, Inc. ("Perry Builders"), now in bankruptcy, which was a North Carolina corporation that purchased lumber, chemically treated it, and sold it to retail supply centers. The individual defendant Perry was the chief operating officer ("COO"), president, director, and a twenty percent shareholder of Perry Builders. Perry is also the COO, president, director, and the majority shareholder of a third corporation, Conn Trucking, Inc. ("Conn Trucking"), a North Carolina corporation that hauls lumber products.

The evidence at trial tended to establish the following facts. Perry Builders experienced some financial difficulties in 1995 and 1996, including recurring annual operating losses. In 1996, Perry Builders defaulted on a loan from First Union which terminated its financing. In March of 1997, Perry Builders entered into a new financing arrangement with CIT Group/Business Credit ("CIT"), pursuant to which all money borrowed from CIT was secured by collateral including: Perry Builders' accounts receivable, inventory, equipment, and property. In addition, all loans from CIT were guaranteed by Perry (individually) and Conn Trucking.

In April of 1997, Perry Builders contacted plaintiff and expressed interest in purchasing lumber from plaintiff. Plaintiff began to sell lumber to Perry Builders in May of 1997 and, over a period of several

months, Perry Builders purchased and paid for over $700,000.00 of lumber. In June or July of 1997, Perry Builders fell behind in its payments to plaintiff. By 12 September 1997, Perry Builders had paid for all lumber purchased from plaintiff through 29 August 1997. However, Perry Builders continued to purchase lumber through 26 September 1997, and ultimately failed to pay for all lumber purchased from plaintiff between 30 August 1997 and 26 September 1997, resulting in an outstanding debt of $146,185.23.

On or about 18 August 1997, Perry hired a "workout" company (Anderson, Bauman, Tourtellot, Vos & Company, or "ABTV") to perform an "operational analysis" of Perry Builders and Conn Trucking and to recommend business strategies, including the possible sale of either company or both companies. On 22 September 1997, ABTV set forth its findings in a report issued to Perry Builders. The report included a recommendation that Perry Builders cease operations, that the company be liquidated, and that Conn Trucking be continued.

According to the valuations set forth in the 22 September 1997 ABTV report, Perry Builders had assets worth $1,973,000.00, including equipment, inventory, real estate, and property. The evidence tended to show that Perry decided, at some point in time after receiving the ABTV report, to liquidate the company's assets and to use the money from the sale of the assets to pay the outstanding debts to the company's creditors. The evidence further tended to show that, between August of 1997 and early January of 1998, Perry fully, or nearly fully, paid off certain debts, including the secured loans from CIT, and an unsecured debt to Conn Trucking for services rendered. However, after 12 September 1997, Perry made no payments on the unsecured debt to plaintiff.

Perry Builders was unable to secure a purchaser of the company's assets outside of bankruptcy. Perry Builders filed for bankruptcy on 9 January 1998 and turned the administration of its assets over to the Bankruptcy Trustee, Richard Sparkman. The company's assets were ultimately sold in bankruptcy for only $335,000.00, resulting in a shortfall of funds to pay all of the creditors. Perry Builders acknowledged in its bankruptcy petition that it owed plaintiff $146,185.23. Plaintiff filed a proof of claim in the bankruptcy proceeding for that amount on 22 December 1998.

On 27 August 1998, plaintiff filed this action against defendants Perry and Conn Trucking. Plaintiff initially set forth four causes of

action in its complaint: fraud, constructive fraud, unfair and deceptive practice (pursuant to N.C. Gen. Stat. § 75-1.1 (1999)), and racketeer influenced and corrupt organizations violation (the "RICO" claim). The trial court denied a motion by Perry to dismiss for lack of jurisdiction. The trial court granted summary judgment in favor of defendants on the RICO claim, and, at the close of all the evidence, the trial court granted a directed verdict as to all claims against Conn Trucking, and as to the fraud claim against Perry. Thus, the trial court submitted to the jury (1) the constructive fraud claim against defendant Perry, and (2) questions of fact pertaining to the unfair and deceptive practice claim.

The jury returned a verdict in favor of plaintiff on the constructive fraud claim and awarded plaintiff damages of $146,185.23. In addition, based upon the jury's findings of fact, the trial court determined as a matter of law that Perry's conduct amounted to an unfair and deceptive practice pursuant to N.C. Gen. Stat. § 75-1.1 and, therefore, trebled the damages pursuant to N.C. Gen. Stat. § 75-16 (1999), resulting in a total recovery of $438,555.00 for plaintiff. Perry moved for Judgment Notwithstanding the Verdict (JNOV) and for a new trial, which motions were denied. Perry appeals and plaintiff cross-appeals.

On appeal, the parties have raised a number of complex issues. First, we will address the trial court's denial of Perry's motion to dismiss for lack of jurisdiction. Second, we will address plaintiff's constructive fraud claim. Third, we will address plaintiff's unfair and deceptive practice claim. Finally, we will examine various other issues raised on appeal.

I. Jurisdiction/Standing

[1] We turn first to Perry's argument regarding the trial court's denial of his motion to dismiss, filed 2 November 1998, and made pursuant to N.C. Gen. Stat. § 1A-1, Rules 12(b)(1) and 12(b)(6) (1999). Perry argues that the motion to dismiss should have been granted because the trial court lacked subject matter jurisdiction over the claims asserted by plaintiff. We disagree.[1]

Perry first argues that the trial court lacked subject matter jurisdiction because plaintiff filed a proof of claim in the Perry Builders

---

1. It should be noted that, at the time of the trial, the bankruptcy proceeding was open and pending and no final determination had yet been made as to what payments would be made to the unsecured creditors of Perry Builders, including plaintiff.

bankruptcy proceeding, and thereby submitted the determination of its claim to the jurisdiction of the bankruptcy court. The cases cited by Perry in support of this argument, and the legal propositions set forth in those cases, are patently inapplicable here. *See, e.g., Langenkamp v. Culp*, 498 U.S. 42, 44-45, 112 L. Ed. 2d 343, 347-48 (1990) (holding that, where a creditor files a claim against a bankruptcy estate, and where the trustee in bankruptcy brings a preference claim against that creditor, that preference action against the creditor is triable only by the bankruptcy court in its equitable jurisdiction, and the creditor does not have a right to a jury trial on that preference action), *reh'g denied*, 498 U.S. 1043, 112 L. Ed. 2d 709 (1991). Perry has not cited any authority for the proposition that a creditor who has filed a proof of claim against a bankrupt corporation is thereby prohibited from instituting a separate proceeding against a director of the corporation seeking damages resulting from an alleged breach of fiduciary duty. Thus, we reject this argument.

Perry also argues that the trial court lacked subject matter jurisdiction because plaintiff's claim is property of the Perry Builders bankruptcy estate and must, therefore, be brought by the trustee in bankruptcy.[2] When a corporation enters bankruptcy, any legal claims that could be maintained *by the corporation* against other parties become part of the bankruptcy estate, *see* 11 U.S.C.A. § 541(a) (West 1993), and claims that are part of the bankruptcy estate may only be brought by the trustee in the bankruptcy proceeding, *see, e.g., National American Ins. v. Ruppert Landscaping Co.*, 187 F.3d 439, 441 (4th Cir. 1999) ("[i]f a cause of action is part of the estate of the bankrupt then the trustee alone has standing to bring that claim"), *cert. denied*, 528 U.S. 1156, 145 L. Ed. 2d 1073 (2000). Because the trustee of the bankruptcy estate has full authority over claims that are part of the bankruptcy estate, a creditor may not pursue such a claim unless there is a judicial determination that the trustee in bankruptcy has abandoned the claim. *See Steyr-Daimler-Puch of America Corp.*

---

2. Perry also appears to argue that this action is subject to the automatic stay provided by 11 U.S.C.A. § 362(a)(3) (West 1993). We note, first, that § 362(a)(3) only prohibits parties from instituting separate proceedings "to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," and Perry has not established that this action, seeking damages from Perry individually, implicates property of the Perry Builders bankruptcy estate. *See In re Litchfield Co. of South Carolina Ltd. Partnership*, 135 B.R. 797, 803-04 (W.D.N.C. 1992). We also note that the record contains an order entered by the United States Bankruptcy Court (E.D.N.C.) in the Perry Builders bankruptcy proceeding, Case No. 01-03355-5-ATS, granting a motion for relief from the automatic stay to allow the appeal in this case to "proceed to decision."

*v. Pappas*, 852 F.2d 132, 136 (4th Cir. 1988). Moreover, this Court has held that North Carolina state trial courts lack subject matter jurisdiction to hear claims that belong to a bankruptcy estate. *See Tart v. Prescott's Pharmacies, Inc.*, 118 N.C. App. 516, 521, 456 S.E.2d 121, 125 (1995).

Perry contends that the essence of plaintiff's claim is that Perry, as an individual director of Perry Builders, directed Perry Builders to make preferential payments to certain creditors for his own benefit and to the detriment of all other creditors. Perry further contends that this preference claim could be brought by Perry Builders against Perry. Therefore, Perry argues, the claim is property of the Perry Builders bankruptcy estate and the trustee of the bankruptcy estate has full authority over the claim. As a result, Perry concludes, the trial court here lacked subject matter jurisdiction to hear plaintiff's claim. We reject Perry's argument because we believe plaintiff's claim is not one that could be brought by Perry Builders against Perry, and, therefore, is not property of the Perry Builders bankruptcy estate.

Whether plaintiff's claim is property of the bankruptcy estate, and, therefore, under the full authority of the bankruptcy trustee, requires an examination of the nature of the claim under state law. *See Pappas*, 852 F.2d at 135. Under North Carolina law, directors of a corporation generally owe a fiduciary duty *to the corporation*, and where it is alleged that directors have breached this duty, the action is properly maintained *by the corporation* rather than any individual creditor or stockholder. *Underwood v. Stafford*, 270 N.C. 700, 703, 155 S.E.2d 211, 213 (1967). However, where a cause of action is "founded on injuries peculiar or personal to [an individual creditor or stockholder], so that any recovery would not pass to the corporation and indirectly to other creditors," the cause of action belongs to, and is properly maintained by, that particular creditor or stockholder. *See id.* Such is the case here.

Plaintiff seeks damages resulting from Perry's individual conduct allegedly constituting constructive fraud; this constructive fraud claim is based upon the theory that Perry breached a fiduciary duty owed directly to plaintiff under "circumstances amounting to a 'winding-up' or dissolution" of Perry Builders. *See Whitley v. Carolina Clinic, Inc.*, 118 N.C. App. 523, 528, 455 S.E.2d 896, 900, *disc. review denied*, 340 N.C. 363, 458 S.E.2d 197 (1995). We hold that a claim brought by a creditor against a director of a corporation, alleging that the director has committed constructive fraud by breaching his fiduciary duty owed directly to the creditor, is a claim founded on in-

juries peculiar or personal to the individual creditor, and, therefore, is a claim that belongs to the creditor and not the corporation. *See Mills Co. v. Earle*, 233 N.C. 74, 62 S.E.2d 492 (1950) (holding that, where corporation has been placed in receivership, individual creditor may maintain claim alleging fraud by individual officers and directors; and specifically rejecting defendants' argument that such claim belongs to receiver for benefit of all corporate creditors and may not be maintained by creditor until receiver has refused to bring claim). Because plaintiff's claim does not belong to Perry Builders, it is not part of the bankruptcy estate, and the trustee in bankruptcy does not have authority to bring this claim pursuant to 11 U.S.C. § 541.[3] For this reason, we reject Perry's argument that the trial court erred in denying his motion to dismiss on the grounds of subject matter jurisdiction.

## II. Constructive Fraud

[2] Rule 51(a) of the North Carolina Rules of Civil Procedure provides that when charging the jury in a civil action, the trial court shall declare and explain the law arising on the evidence. *See* N.C. Gen. Stat. § 1A-1, Rule 51(a) (1999). This rule imposes upon the trial judge a positive duty to explain the law to the jury, and a failure to adequately explain the law to the jury requires a new trial. *See, e.g., Board of Transportation v. Rand*, 299 N.C. 476, 483, 263 S.E.2d 565, 570 (1980). Similarly, the trial court must submit to the jury issues which properly frame the essential factual questions, and a new trial must be awarded where the trial court fails to do so. *See, e.g., HPS, Inc. v. All Wood Turning Corp.*, 21 N.C. App. 321, 326, 204 S.E.2d 188, 191 (1974). Having carefully reviewed the record, we hold that, as to the constructive fraud claim, the trial court failed to adequately declare and explain the law to the jury in its instructions, and failed to submit to the jury issues which properly frame the essential factual questions. Thus, we remand for a new trial on this claim.

---

3. We note that, although Perry refers in passing to the trustee's alternate source of power under the Bankruptcy Act—11 U.S.C.A. § 544 (West 1993), which involves rights of creditors—Perry does not specifically argue that the trial court lacked subject matter jurisdiction because the trustee in bankruptcy is authorized to pursue plaintiff's claim in the bankruptcy proceeding *on behalf of all creditors pursuant to § 544*. Therefore, we find it unnecessary to address the issue of whether a trustee in bankruptcy has the power under § 544 to bring a general claim on behalf of all creditors, which issue has apparently been addressed with conflicting results by various Federal Circuit Courts. *See, e.g., Koch Refining v. Farmers Union Cent. Exchange, Inc.*, 831 F.2d 1339 (7th Cir. 1987), *cert. denied*, 485 U.S. 906, 99 L. Ed. 2d 237 (1988); *In re Ozark Restaurant Equipment Co., Inc.*, 816 F.2d 1222 (8th Cir.), *cert. denied*, 484 U.S. 848, 98 L. Ed. 2d 102 (1987).

The elements of a constructive fraud claim are proof of circumstances " '(1) which created the relation of trust and confidence [the "fiduciary" relationship], and (2) [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff.' " *Terry v. Terry*, 302 N.C. 77, 83, 273 S.E.2d 674, 677 (1981) (citation omitted). Put simply, a plaintiff must show (1) the existence of a fiduciary duty, and (2) a breach of that duty.

In its complaint, plaintiff based its constructive fraud claim upon the following allegations: that Perry Builders became insolvent at some point in time toward the end of 1997; that, as a result of such insolvency, defendant Perry, as director of Perry Builders, owed plaintiff, as a creditor of Perry Builders, a fiduciary duty; that Perry breached his fiduciary duty to plaintiff, and that such breach constituted constructive fraud; and that Perry's constructive fraud proximately caused damages to plaintiff.

Thus, it was essential that the jury determine: whether Perry had a fiduciary duty to plaintiff; at what point in time any such fiduciary duty arose; whether Perry breached any such fiduciary duty to plaintiff once it arose; and what amount of damages any such breach of fiduciary duty proximately caused. It was also vital that the trial court explain to the jury under what limited circumstances the law imposes a fiduciary duty upon a director of a corporation for the benefit of creditors of the corporation.

The "Jury Issue Sheet" set forth the following issues for the constructive fraud claim:

1. Did the exchange of lumber between the plaintiff and Perry Builders Outlet, Inc., between August 30, 1997 and September 26, 1997 arise out of a relationship where Leon Perry, III was a fiduciary for Keener Lumber? _____

   If you answer "Yes," go to issue 2. If you answer "No," go to issue 4.

2. Did Leon Perry, III act openly, fairly, and honestly, and take no advantage of Keener? _____

   If you answer "No," go to issue number 3. If you answer "Yes," go to issue 4.

3. What amount of damages, if any, did Keener suffer as a result of the breach of fiduciary duty by Leon Perry, III? _____

Addressing the first issue, the trial court instructed the jury as follows:

> On [the first] issue the burden of proof is on the Plaintiff. This means that the Plaintiff must prove by the greater weight of the evidence that the sale of timber arose out of a relationship where the Defendant was a fiduciary for the Plaintiff. A fiduciary is a person in whom a special confidence or trust is placed by another and who, under the circumstances or their relationship, is required to act in good faith and with due regard to such other person. A director of a corporation has a fiduciary duty to all creditors to treat them fairly and equally while the corporation is insolvent.

Addressing the second issue, the trial court instructed the jury:

> You are to answer [the second] issue only if you have answered the preceding issue yes in favor of the Plaintiff. It is the law of this state that the Plaintiff is entitled to damage incurred as a result of the purchase of lumber by Perry Builders, Inc., from August 29 through September 26, 1997, unless it was open, fair, and honest, and no advantage was taken of the Plaintiff by the Defendant.
>
> On this issue, the burden of proof is on the Defendant. This means that the Defendant must prove by the greater weight of the evidence two things. First, that the sale of timber was open, fair, and honest, and second, that no advantage was taken of the Plaintiff by the Defendant. . . .

As to the third issue, the trial court instructed the jury as follows:

> The Plaintiff must prove by the greater weight of the evidence the amount of damages sustained as a result of this injury. The Plaintiff's damages are to be reasonably determined from the evidence presented in this case and Plaintiff is not required to prove with mathematical certainty the exact extent of its injury in order to recover damages. . . .

Having carefully reviewed the entire record, we hold that, as to the constructive fraud claim, the Jury Issue Sheet and the trial court's instructions were inadequate for a number of reasons.

### A. Existence of the Fiduciary Duty

"As a general rule, directors of a corporation do not owe a fiduciary duty to creditors of the corporation." *Whitley*, 118 N.C. App. at

526, 455 S.E.2d at 899. However, North Carolina law holds that, under certain circumstances, directors of a corporation do owe a fiduciary duty to creditors of the corporation, and that this duty is breached if the directors take advantage of their position for their own benefit at the expense of other creditors. *See id.*

The circumstances required to trigger this fiduciary duty were initially described by North Carolina courts simply as "insolvency" of the corporation. *See Hill v. Lumber Co.*, 113 N.C. 174, 176, 18 S.E. 107, 108 (1893). In the early cases, "insolvency" meant balance sheet insolvency. *See id.* at 179, 18 S.E. at 109 (a corporation is "insolvent" where "it owes more than its capital can pay"). The triggering circumstances were later expanded to include situations where a corporation "is in declining circumstances and verging on insolvency," *Wall v. Rothrock*, 171 N.C. 388, 391, 88 S.E. 633, 635 (1916), or where a corporation has become "insolvent or nearly so," has made a conveyance of its entire property "with a view of going out of business," and where such facts establish circumstances that amount "practically to a dissolution," *Bassett v. Cooperage Co.*, 188 N.C. 511, 512, 125 S.E. 14, 14 (1924).

Recently, this Court had an opportunity to further discuss the circumstances required to trigger the existence of a director's fiduciary duty to creditors. In *Whitley*, 118 N.C. App. 523, 455 S.E.2d 896, the plaintiffs/creditors claimed that the individual defendants/directors owed plaintiffs a fiduciary duty during a specific period of time because the corporation's audited balance sheets for the relevant time period reflected liabilities in excess of assets (balance sheet insolvency), as well as negative stockholders' equity.

Relying primarily on *Bassett,* this Court stated that "more than 'balance sheet insolvency' is required in order to impose on directors a fiduciary duty to creditors." *Id.* at 527, 455 S.E.2d at 899. We noted that the Supreme Court in *Bassett* had found that a fiduciary duty existed in that case due to the fact that the corporation in question had been "practically insolvent," and that there had been a sale of the corporation's entire property ". . . *'with a view of going out of business' . . .*" which ". . . *'amounted practically to a dissolution' . . . .*" *Id.* (quoting *Bassett,* 118 N.C. at 512, 125 S.E. at 14). This Court in *Whitley* also noted that, according to one authority, insider preference liability may be limited to situations involving the *liquidation* of a corporation. *Id.* at 527, 455 S.E.2d at 900 (citing Russell M. Robinson, II, *Robinson on North Carolina Corporation Law* § 14.8, at 247-48 (4th ed. 1990)). We further noted that, according to a second

authority, " 'a corporation is *not insolvent,* as a general rule, merely because it is embarrassed and cannot pay its debts as they become due, or because its assets, if sold, would not bring enough to pay all its liabilities, *if it is still prosecuting its business in good faith, with a reasonable prospect and expectation of continuing to do so.' " Id.* at 527-28, 455 S.E.2d at 900 (quoting 15A William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 7472, at 273-74 (perm. ed. rev. vol. 1990)).

Applying all of these principles, we held in *Whitley* that a corporate director has a fiduciary duty to creditors only "under circumstances amounting to a 'winding-up' or dissolution of the corporation." *Id.* at 528, 455 S.E.2d at 900. We then applied this holding to the facts of the case. We noted that during the relevant time period: (1) the corporation was balance sheet insolvent, but was solvent on a cash flow basis in that it was always able to pay its financial obligations when they were due; and (2) there was no evidence that the corporation was making plans to cease doing business or that it was conducting its business in bad faith. *Id.* at 529, 455 S.E.2d at 900. On these grounds we held that no fiduciary duty had been triggered.

*Whitley* clearly establishes that directors of a corporation owe a fiduciary duty to creditors of the corporation only where there exist "circumstances amounting to a 'winding-up' or dissolution of the corporation." *Id.* at 528, 455 S.E.2d at 900. *Whitley* also indicates that various factors may be considered in determining whether there existed circumstances amounting to a winding-up or dissolution, including but not limited to: (1) whether the corporation was insolvent, or nearly insolvent, on a balance sheet basis; (2) whether the corporation was cash flow insolvent; (3) whether the corporation was making plans to cease doing business; (4) whether the corporation was liquidating its assets with a view of going out of business; and (5) whether the corporation was still prosecuting its business in good faith, with a reasonable prospect and expectation of continuing to do so. Finally, *Whitley* clearly holds that "[b]alance sheet insolvency, absent [circumstances amounting to a 'winding-up' or dissolution of the corporation] is insufficient to [trigger] a fiduciary duty to creditors of a corporation." *Id.*

Considering this complex analysis regarding what circumstances are sufficient to trigger a director's fiduciary duty to creditors, we believe the trial court's jury instructions here were inadequate. The trial court simply instructed the jury that "[a] director of a corporation has a fiduciary duty to all creditors to treat them fairly and

equally while the corporation is insolvent." This instruction does not sufficiently explain the circumstances under which the law imposes upon directors a fiduciary duty to creditors.

We also believe that the first issue presented to the jury did not properly frame the question of whether Perry owed plaintiff a fiduciary duty. The first issue on the jury sheet and the court's instructions seem to imply that the jury need only determine whether Perry owed plaintiff a fiduciary duty between 30 August 1997 and 26 September 1997 (the period of time when Perry Builders purchased lumber for which it ultimately failed to pay). However, this construction of the fiduciary duty issue is more narrow than is warranted by either plaintiff's allegations in its complaint, or the law. Plaintiff's complaint alleges that Perry breached a fiduciary duty to plaintiff (1) by directing Perry Builders to purchase lumber from plaintiff without informing plaintiff as to the financial status of the company, and also (2) by making preferential payments to creditors other than plaintiff while Perry had a fiduciary duty to treat all creditors equally. Thus, the issue should not be limited to whether there was a fiduciary duty only during the time when the lumber was purchased, especially since an affirmative answer to such a question would fail to specify precisely when the duty arose. The issue is simply whether a fiduciary duty to creditors arose *at any point in time*, and, if so, when.[4]

We believe that, as to the existence of a fiduciary duty, the Jury Issue Sheet should have set forth two issues (in place of the first issue actually presented to the jury in this case):

(1) Did Perry owe a fiduciary duty to Keener at any point in time?

(2) If yes, at what point in time did this fiduciary duty arise?

Furthermore, the jury should have been specifically instructed that: directors of a corporation owe a fiduciary duty to creditors of the corporation only where there exist "circumstances amounting to a 'winding-up' or dissolution of the corporation," *id.* at 528, 455 S.E.2d at 900; that balance sheet insolvency alone, absent such circumstances, is

---

4. The parties' and the trial court's inclination to focus only on this period of time is understandable: *Whitley* states that "for a corporate director to breach a fiduciary duty to a creditor, *the transaction at issue* must occur under circumstances amounting to a 'winding-up' or dissolution of the corporation." *Whitley*, 118 N.C. App. at 528, 455 S.E.2d at 900. However, in this case, the "transactions" which may have constituted a breach of fiduciary duty include both the lumber purchases as well as the preferential payments by Perry to creditors other than plaintiff, which transactions did not necessarily occur only during this limited period of time.

insufficient to trigger the fiduciary duty; and that various factors may be considered in determining whether there existed circumstances amounting to a winding-up or dissolution, including, but not limited to, the five factors set forth above.

## B.  Breach of the Fiduciary Duty

On the issue of whether there was a breach of fiduciary duty, the Jury Issue Sheet asked the jury whether Perry acted "openly, fairly, and honestly," and whether he took "no advantage of" plaintiff. Although this is an accurate statement of the law regarding general fiduciary duties, we believe that the better approach would be to simplify the issue on the Jury Issue Sheet and to supplement the issue with an instruction more carefully tailored to the specific context. Thus, the next issue for the jury should simply read:

(3) If Perry had a fiduciary duty to Keener, did he, at any time after the fiduciary duty arose, breach this fiduciary duty?

The accompanying jury instructions should explain that, once a director's fiduciary duty to creditors arises, a director is generally prohibited from taking advantage of his intimate knowledge of the corporate affairs and his position of trust for his own benefit and to the detriment of the creditors to whom he owes the duty. *Steel Co. v. Hardware Co.*, 175 N.C. 450, 451-52, 95 S.E. 896, 897 (1918); *Whitley*, 118 N.C. App. at 526, 455 S.E.2d at 899. The jury should also be instructed that, once the fiduciary duty arises, a director must treat all creditors of the same class equally by making any payments to such creditors on a pro rata basis. *See Bassett*, 188 N.C. at 512, 125 S.E.2d at 14. We further suggest that the jury be instructed that, under the particular facts of this case, if a fiduciary duty arose at some point in time, the acts that *may* have amounted to a breach of this fiduciary duty include, but are not necessarily limited to: (1) continuing to purchase lumber from plaintiff without disclosing the status of Perry Builders; and (2) failing to pay all creditors of the same class on a pro rata basis.

We also believe that the jury should be instructed that even after the fiduciary duty arises, directors of a corporation may prefer secured creditors over unsecured creditors. *See Drug Co. v. Drug Co.*, 173 N.C. 502, 508, 92 S.E. 376, 378 (1917) ("it is now well established that the capital stock of a corporation, especially its unpaid subscriptions, is a trust fund to be secured and administered for the benefit of the general creditors of the corporation, *subject, of course,*

*to the claims of lienors entitled to priority"* (emphasis added)); *see also* 15A William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 7434, at 187 (perm. ed. rev. vol. 2000) (for preference to one creditor to be "unlawful" it must result in detriment to other creditors "of the same class who have similar or superior interests in the corporate assets"); 18B Am. Jur. 2d *Corporations* § 2155 (1985) ("[a] preference is a transfer of any of the property of an insolvent corporation which has the effect of enabling a creditor to obtain a greater percentage of his debt than any other creditor of the same class"); *see also, Association of Mill and Elevator Mut. Ins. Co. v. Barzen Intern., Inc.*, 553 N.W.2d 446, 451 (Minn. Ct. App. 1996) (paying down secured line of credit to bank creditor during liquidation is not impermissible preference and does not constitute breach of fiduciary duty to unsecured creditors). Moreover, the jury should be instructed that this proposition is true even where (1) the director himself is the creditor (provided the debt was secured while the corporation was solvent), or (2) where the secured debt from a third-party creditor is guaranteed by the director. *See Hill*, 113 N.C. at 178, 18 S.E. at 108 (noting that director/creditor with lien upon corporate property may receive priority over unsecured creditors); *see also Robson v. Smith*, 777 P.2d 659, 661-62 (Alaska 1989) ("[d]irectors, who in good faith make loans to a solvent corporation and become its secured creditors, can have their secured debt validly paid ahead of unsecured creditors").

## C. Damages

Although the final issue submitted to the jury ("[w]hat amount of damages, if any, did Keener suffer as a result of the breach of fiduciary duty by Leon Perry, III") was proper, we believe that the trial court should explain two additional points to the jury in its instructions. First, the trial court should explain that if the jury determines that Perry breached a fiduciary duty by continuing to purchase lumber from plaintiff (after the duty arose) without disclosing the status of Perry Builders, the jury should first determine what damages resulted from this breach before determining damages from any other possible breach. Second, the trial court should explain to the jury what it means to pay all creditors of the same class on a pro rata basis, and how the jury is to go about calculating the damages resulting from a failure to do so.

For example, the jury might determine that a fiduciary duty arose on 22 September 1997, and that Perry breached this duty (1) when he purchased lumber from plaintiff after this date without disclosing

that Perry Builders was planning to liquidate and cease operations, and (2) by failing to pay plaintiff on a pro rata basis after this date. Under these circumstances, the jury might conclude (1) that Perry's breach by making purchases after 22 September 1997 without disclosing certain information resulted in damage equal to the total value of all purchases made after 22 September 1997, and (2) that Perry's breach by making preferential payments to certain creditors after 22 September 1997 resulted in damage equal to the pro rata share of the *remaining debt* owed to plaintiff (the total of all *other* unpaid invoices) that plaintiff would have received if Perry had paid all creditors of the same class equally. Without such explanation, we are concerned that, if the jury determines there was any breach of fiduciary duty, the jury might simply award plaintiff the total amount of all unpaid invoices, rather than determining what specific amount of damages proximately resulted from any particular acts constituting a breach of fiduciary duty. We are confident that the trial court and the parties will be able to fashion an appropriate instruction in this regard.

For these reasons, we remand for a new trial on plaintiff's constructive fraud claim in accordance with the suggested jury instructions and jury issues outlined above.

### III. Unfair and Deceptive Practice

[3] Plaintiff's complaint sets forth certain specific factual allegations in support of the unfair and deceptive practice claim pursuant to N.C. Gen. Stat. § 75-1.1. The jury in its verdict clearly determined that plaintiff had not proven these specific factual allegations. Therefore, we reverse the trial court's determination that, as a matter of law, Perry's conduct amounted to an unfair and deceptive practice.

The Jury Issue Sheet contained the following issues pertaining to the unfair and deceptive practice claim:

4. (a) Did the defendant Leon Perry, III do any of the following:

1. Obtain lumber from Keener without the intent to pay for such lumber? _____; or

2. Make preferential payments to creditors other than Keener as a fiduciary? _____

If you answer "Yes" to any of the above, go to (b). If you do not answer "Yes" to any of the three [sic] above, stop.

(b) Was the defendant Leon Perry, III's conduct in commerce or did it affect commerce? _____

If you answer "Yes" to (b), go to (c). If you answer "No," stop.

(c) Was the defendants' conduct a proximate cause of the plaintiff's injury? _____

If you answer "Yes," go to (d). If you answer "No," stop.

(d) In what amount, if any, has the plaintiff Keener been injured? _____

The jury answered "no" to 4(a)1 (thus determining that Perry *had* intended to pay for the lumber purchased from plaintiff), but answered "yes" to 4(a)2 (thus determining that Perry made preferential payments to creditors other than plaintiff). However, in its complaint, plaintiff did not base its unfair and deceptive practice claim upon the allegation that Perry made preferential payments to other creditors. Only the constructive fraud claim was founded upon allegations of preferential payments. Rather, the unfair and deceptive practice claim was based solely upon the following allegations: that plaintiff agreed to sell lumber to Perry Builders based on Perry's representations that plaintiff would be paid upon delivery or within ten days from delivery; that Perry intended to defraud plaintiff and to use the lumber purchased from plaintiff to pay debts to certain other creditors; and that Perry did not intend to pay plaintiff for this lumber. Thus, we believe that question 4(a)2 should not have been presented to the jury because it does not conform to the allegations in plaintiff's complaint.

Furthermore, because the jury answered "no" to question 4(a)1, the jury's verdict amounts to a determination that plaintiff did not prove the allegations set forth in its complaint in support of the unfair and deceptive practice claim. Therefore, we reverse the trial court's judgment against Perry on the unfair and deceptive practice claim.

### IV. Other Assignments of Error

[4] Perry has also assigned error to a number of evidentiary rulings made by the trial court during the trial. Because we remand for a new trial on the constructive fraud claim, we need not address evidentiary rulings made at the first trial, as such issues may not arise again or in exactly the same way during the new trial. Finally, plaintiff has cross-assigned as error the trial court's dismissal of all claims against Conn Trucking, and of plaintiff's fraud and RICO claims against Perry. We

have reviewed these cross-assignments of error and find them to be without merit. Therefore, we affirm the trial court's dismissal of all claims against Conn Trucking and of the fraud and RICO claims.

[5] Plaintiff also cross-assigns error to the trial court's refusal to instruct the jury on the "piercing the corporate veil" doctrine. The "piercing the corporate veil" doctrine is "a drastic remedy" and "should be invoked only in an extreme case where necessary to serve the ends of justice." *Dorton v. Dorton*, 77 N.C. App. 667, 672, 336 S.E.2d 415, 419 (1985). The doctrine allows courts to disregard the corporate form (or "pierce the corporate veil") of a corporation where some alternate entity (whether an individual or another company) exerts complete domination over the corporation's policy, finances and business practices. *See Glenn v. Wagner*, 313 N.C. 450, 455, 329 S.E.2d 326, 330 (1985). Piercing the corporate veil of a corporation allows a plaintiff to impose legal liability for a corporation's obligations, or for torts committed by the corporation, upon some other company or individual that controls and dominates the corporation. *See id.* at 454, 329 S.E.2d at 330. Plaintiff here purportedly sought to pierce the corporate veil of Perry Builders, and to have the trial court instruct the jury on this doctrine. However, we do not believe plaintiff's complaint warranted application of this doctrine.

The complaint does not allege that defendant Perry should simply be held liable for Perry Builders' acknowledged debt to plaintiff based upon Perry's complete domination of Perry Builders. Nor does the complaint allege any torts committed by Perry Builders for which plaintiff might seek to hold defendant Perry liable. Rather, the complaint alleges only causes of action against Perry individually and directly for fraud, constructive fraud, unfair and deceptive practice, and RICO violation. Because there are no causes of action against Perry Builders set forth in the complaint for which plaintiff might seek to hold Perry liable under a "piercing the corporate veil" theory, the trial court properly refused to instruct the jury on this doctrine.

In summary: we affirm the trial court's denial of Perry's motion to dismiss on the grounds of jurisdiction; we affirm the trial court's grant of summary judgment for Perry on the RICO claim; we affirm the trial court's directed verdict for Perry on the fraud claim and all claims against Conn Trucking; we reverse the trial court's determination as a matter of law that Perry's conduct amounted to an unfair and

deceptive practice; we uphold the trial court's refusal to instruct the jury on the "piercing the corporate veil" doctrine; and we remand to the trial court for a new trial on the constructive fraud claim.

Affirmed in part, reversed in part, and remanded in part for a new trial.

Judges McGEE and BRYANT concur.